CHARLES E. STEWART, executor, *vs.* MARY ·B. STEWART.

Middlesex.    December 3, 1900. — January 4, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

An instrument which contains a power of attorney *inter vivos* may also be a codicil to a will.

A large part of a testator's property consisted of deposits in savings banks and his will gave five legacies of $3,000 each. The following instrument, which was shown to have been executed by him *animo testandi*, and duly attested, was held to be a valid codicil appointing his son executor: " To all whom it may concern, That I, A., being nearly blind, and enfeebled, cannot attend to my business transactions, and that I, hereby, give my son B. the full Power of Attorney to attend to my business affairs, such as collecting money from the banks, such as · drawing Interest, or closing accounts by surrendering the books, and paying out same according to directions in my Will." *Held, also,* that evidence, that the testator expressly contemplated the settlement of his estate by his son, in conversations before and after executing this instrument, was competent.

APPEAL, from a decree of *Holmes,* C. J., affirming a decree of the Probate Court admitting to probate the third codicil to the will of Rensselear S. Stewart. The case was reported by the Chief Justice for the consideration of the full court, as follows:

" The will and first two codicils were written by the testator with his own hand. The document presented as a third codicil was dictated by him to his daughter on the day of its date, and the three witnesses were called by his direction. It appeared, if material, that he expressly contemplated the settlement of his

estate by his son, in conversations before and after executing
this instrument; that some time after execution he handed
this instrument to his son, to be used as a power of attorney;
that it was returned to him with a reported statement from a
bank that it was no good until after his death, and then was
sealed up by him and put away in a drawer in which were his
will and numerous other papers. I find that if the paper can
operate as a codicil it was executed *animo testandi.* The tes-
tator's property consisted of his house lot, house and household
furniture, and a considerable sum of money in savings banks.

" On the foregoing facts I find and rule that while the instru-
ment operated in the first place as a power of attorney *inter
vivos,* the last words ought not to be taken only in their narrow
and strictly grammatical sense as seeking merely to annex an-
other incident to that power, but are sufficient to constitute and
do constitute a codicil, and I admit it to probate."

The will was as follows :

" Concord Feb. 6th 1891. To whom it may concern. That
this is my last will and testament.

" 1st. That Daughter Charlotte H. Dillingham shall receive
Three Thousand Dollars for her own use and her children, Free
from the controle of all others, or their Debts. 2d. That my
son Charles E. Stewart shall receive Three Thousand Dollars in
his own right. 3d. That my Daughter Mary B. Stewart shall
receive Three Thousand Dollars in her own right. 4th. That
Daughter Annie W. Warren shall receive Three Thousand Dol-
lars in her own, and childrens right free from the controle of
all others. 5th. That my grandaughter F. G. Bailey shall re-
ceive Three Thousand . Dollars free from the controle of all
others whatsoever, Provided that if she should Die without
children of her of her own boddy, that what she received
through my Will, shall revert to my liveing children — or if
Dead, to their children.

" 6th. that all Property of everry description left over the
above Bequests shall go to my son Ch E. Stewart, and my
Daughter Mary B. Stewart, in equal Interest — they to settle
up all claims and use the balence to keep a home or sell as they
think best. If the house is kept by them the Furniture may
remain as it has for the past ten years and all rights remain the
same.

" 7th.  F. Gertrude Bailey to have a room as in the past — if you can agree — she paying her share of keeping the house in Repair — not Alterations — and Board and household expences, the above clause for herself only, so long as all can agree — this not to hinder the owners from selling the Place if they wish to "

The first codicil was as follows : " Concord. April 17the, 1896. To all whom it may concern.  This a codicil to my last Will, Namely, First.  That my son Ch. E. Stewart, shall have all of my personal Clothing, that she shall have my Piano, and its belongings.  that he shall have my Ghamberesett in his Front Chamber.  that he shall have the carpet on the same, fr the Bed room floor ; that he shall have the Brass Fire sett in his Parlor.  that he may have One quarter of all cash that may be left, after paying all the sums left in my Will and, the Expences attending the Death and Burriell of my Body.  that he shall have the garden Tools, But let his sister Mary have the use of them if she wishes.  Seckond, that Mary B. Stewart shall have all of my Furniture in the part of the House that I occupy. That she shall have all the  Articles of mine in the garrett. That she shall of mine in the cellar.  All of mine in the Stable. that she have all of mine in the shed, coal, Wood, Oil, and other articles of mine.  That she have Three quarters of all cash that may be left after Paying all bequests, Provided that if ready Money falls short, then Each recipient by the Will shall share alik in the Deficiency."

The second codicil was as follows : " Concord, March 29, '97. To my children.  Thoes who take up the amount of the Note that I gave each of the children for 144.00 will have the the amount received, deducted from the amount left them in my Will on settlement of said Will,   I gave all the money that I could spare them when I made the will  I must look upon it as an advanced payment on said Will.  It will be Right to do so.  This is a Codicil to my  Will."

The instrument presented and allowed as a third codicil was signed by the testator and attested by three witnesses, and was as follows : " Concord, Sept. 12th, 1898.  To all whom it may concern, That I, R. S. Stewart, being nearly blind, and enfeebled, cannot attend to my business transactions, and that I,

hereby, give my son Charles E. Stewart, the full Power of Attorney to attend to my business affairs, such as collecting money from banks, such as drawing Interest, or closing accounts by surrendering the books, and paying out same according to directions in my Will."

The respondent, Mary B. Stewart, alleged as reasons of appeal : 1. That the alleged will and codicils are not in due form nor executed according to law. 2. That R. S. Stewart did not execute these said instruments with intent to make a will or codicil. 3. That the alleged third codicil does not nominate the petitioner to be executor of the will of R. S. Stewart.

*G. G. King*, for the respondent.

*E. A. Bayley*, for the petitioner.

KNOWLTON, J. The Chief Justice at the hearing, found as a fact that if the paper in question " can operate as a codicil, it was executed *animo testandi.*"

The paper having been executed with this purpose, there is nothing in its form or substance to prevent its taking effect as a codicil. *Osborn* v. *Cook*, 11 Cush. 532. It was sufficiently attested. *Ela* v. *Edwards*, 16 Gray, 91.

A paper may be valid as a will which is also in part a contract *inter vivos*. *Cross* v. *Cross*, 8 Q. B. 714. *Robinson* v. *Schly*, 6 Ga. 515. It is no objection to the validity of a will or codicil that it only appoints an executor. *Sumner* v. *Crane*, 155 Mass. 483.

While the language of this paper does not expressly appoint an executor of the testator's will, it can be given testamentary effect only by treating it as showing the testator's intention to have his son, Charles E. Stewart, act as his executor. So to treat it does not strain the language, when we consider that a large part of the testator's property was deposits in savings banks, and that the original will gives five pecuniary legacies of $3,000 each. We are of opinion that the form and language of the paper do not preclude us from holding it to be a codicil when we find that it was executed *animo testandi*.

It is at least doubtful if the report presents the question whether the finding that the paper was executed with a testamentary purpose was warranted. It does not state the evidence, nor does it expressly say that the facts reported are the sole

foundation of the finding; but if this question is before us, we are of opinion that enough appears to warrant an inference that the testator signed the paper with this purpose. The will and the two previous codicils were written with his own hand. He dictated this document to his daughter, and directed that three persons be called in to witness the execution of it. In this there is some suggestion that he intended it as a codicil. On the question whether he so intended it, we are of opinion that the fact " that he expressly contemplated the settlement of his estate by his son, in conversations before and after executing this instrument," is competent, on the same principle as evidence that a paper conforms, or fails to conform, to the previously expressed purpose of one in regard to the disposition of his property, is evidence on the question whether the paper was intelligently executed as his will by a person of sound mind. In the present case the fact is of some significance. He kept the instrument in his own possession until some time after its execution and then handed it to his son to be used as a power of attorney. " It was returned to him with a reported statement from a bank that it was no good until after his death, and then was sealed up by him and put away in a drawer in which were his will and numerous other papers." On the question what was his intention as to the use to be made of the paper, we are of opinion that his conduct in regard to it immediately after its execution, and continued up to the time of his death with only a slight interruption, seemingly for a special purpose, is competent evidence. Underhill, Wills, § 39. *Witherspoon* v. *Witherspoon*, 2 McCord, (S. C.) 520. The nature of his estate, and the fact that the specific things authorized to be done after his death included a large part of that which would be required of an executor, are also of significance.

While there is no one thing that is sufficient alone to show that the paper was intended to be testamentary, the facts taken together well warranted the finding of the judge.

*Decree affirmed.*