ADAMS v. MARIS.   (No. 40-2695.)

(Commission of Appeals of Texas, Section A. June 25, 1919.)

1. EVIDENCE ⟾293(6) — PAROL EVIDENCE — CONSTRUCTION OF WILL—AMBIGUITY.

Papers consisting of an envelope indorsed, "Notes," and a letter asking payees of note inclosed to accept "this" for the kindness shown, are ambiguous as to whether deceased writer and maker intended a present or a testamentary gift, and parol evidence is admissible to aid construction.

2. WILLS ⟾487(1) — CONSTRUCTION — EVIDENCE—INTENTION OF TESTATOR.

While the statute requiring wills in writing precludes ascribing to testator any intention not expressed, yet there is an obligation to give effect to the intention which the will properly expounded contains, and therefore evidence simply explaining the writing is admissible.

3. WILLS ⟾293(6)—PRESENT OR TESTAMENTARY GIFT—PAROL EVIDENCE.

If a paper executed by a donor clearly evidences on its face an intention to make a gift inter vivos which is not consummated by delivery, the paper cannot, by the aid of parol testimony, be converted into a will in contravention of a statute requiring that a will be in writing.

4. WILLS ⟾477 — WRITING REFERRED TO IN WILL.

Where a note in an envelope indorsed, "Notes," existed when the inclosed letter asking payees to accept "this" was written, the word "this" referring to note, such reference would not of itself incorporate note into letter, nor would fact that note was written at same time make it a part of letter.

5. WILLS ⟾477—WRITING REFERRED TO IN WILL.

Evidence that a note in a sealed envelope, indorsed, "Notes," was only thing sealed up with letter asking payees to accept "this," held sufficient to support jury's conclusion that word "this" referred to inclosed note.

6. WILLS ⟾488 — PAROL EVIDENCE — AMBIGUITY.

The words "this" and "notes," in an alleged will consisting of an envelope addressed to payees and with the word "notes" indorsed and a letter asking payees to accept "this" held not unintelligible and inconsistent with themselves to the extent that parol evidence was not admissible to aid their meaning.

7. WILLS ⟾488—PATENT AMBIGUITY—POLICY OF COURTS.

Courts are reluctant to declare wills void for uncertainty, and it is only when the instrument is unintelligible or uncertain, after admission of extrinsic evidence as to situation of parties and circumstances, that a true patent ambiguity is established.

8. WILLS ⟾134—HOLOGRAPHIC WILL.

An envelope addressed to one payee and indorsed, "Notes," and a letter inclosed asking payees to accept "this," the word "this" referring to a form note inclosed partly in deceased maker's handwriting, the envelope and letter being wholly in his handwriting, held valid as a holographic will.

9. WILLS ⟾182—REVOCATION BY DIFFERENT WILL—INCONSISTENCY.

The disposition of property by different wills will be sustained, unless the inconsistency is such that the wills cannot stand together, and a later will revokes a former only when and to the extent that it is inconsistent with the former.

10. WILLS ⟾182 — REVOCATION BY LATER WILL.

Where one by a holographic will had given a note to the two payees thereof, his later will, giving to another a certain sum and providing that at his death the rest of his property should

---

go to his bodily heirs, assumed to mean his half brothers and sisters, did not prevail over the specific bequests to the legatees named.

**11. WILLS ⬤⟞306 — REVOCATION—EVIDENCE.**

Evidence *held* to sustain jury's finding that a later will was not intended to revoke former holographic will.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Application by F. Y. Adams for the probate of certain papers as the will of E. Vanlaw, deceased, opposed by C. H. Maris. From a judgment admitting the papers to probate, the contestant appealed, and, from a judgment of the Court of Civil Appeals (166 S. W. 475) reversing and rendering in part and affirming in part, proponent brings error. Part of judgment of Court of Civil Appeals denying probate reversed, and judgment of trial court and that part of judgment of the Court of Civil Appeals admitting to probate another will affirmed.

Tatum & Tatum, of Dalhart, and W. Boyce, of Amarillo, for plaintiff in error.

W. W. Moore and J. Y. Powell, both of Houston, D. W. Harrington, of El Paso, and Madden, Trulove & Kimbrough, of Amarillo, for defendant in error.

TAYLOR, J. The following documents were admitted to probate as the last will and testament of E. Vanlaw on the application of N. Y. Adams:

"(1) An envelope on which is written horizontally the words, 'Henry Boyce,' and across the end, the word, 'Notes.'

"(2) A sheet of paper apparently taken from a small writing tablet, and on which was written the words: 'Henry, please except this you & F. Y. Adams for the kindness shown me. E. Vanlaw.'

"(3) A promissory note prepared on a printed blank, a copy of which, putting Vanlaw's writing · in italics, is as follows, omitting the interest, attorney's fees, waiver, and protest clauses appearing in script:

"'$14,000.          Dumas, Texas, July 3, 1911.

"'*Fifteen after date* after date, for value received, I, we, or either of us promise to pay to the order *of F. Y. Adams & Henry Boyce, fourteen thousand dollars* dollars.

"'Due ——— [Signed] E. Vanlaw.

"'No. ———

"'P. O. ———' "

C. H. Maris, a half-brother of E. Vanlaw, deceased, contested the application. On appeal to the district court by the contestant, judgment was entered admitting to probate the foregoing instruments, and also establishing as a will to be construed in connection therewith an instrument, which will be hereafter referred to as the "Geary will."

The Court of Civil Appeals affirmed the judgment of the trial court in so far as it admitted to probate the Geary will; but reversed the judgment in so far as it admitted to probate the letter, envelope, and note, and rendered judgment denying probate of said instruments. Probate was denied on two grounds: (1) That the testamentary character of the instruments was not clearly evidenced on their face; and (2) that the three instruments taken together do not constitute and meet the requirements of a holographic will. Associate Justice Hendricks dissented from the view of the majority of the court that parol evidence of extrinsic circumstances was inadmissible to show testamentary intention on the part of the deceased; but agreed with the majority in holding that the three instruments denied probate do not, taken together, meet the requirements of a holographic will, in that they are not wholly written by the deceased. He disagreed with Associate Justice Hall that the envelope, letter, and note are destroyed as a will by virtue of any insufficiency in the reference in the letter to the inclosed note. The majority of the court entertaining the view that the Boyce-Adams documents fail as a will did not consider the question of the effect of the Geary will. Judge Hendricks expresses the opinion in effect that, if the Boyce-Adams instruments are valid as a will, they are not inconsistent with the terms of the Geary will.

The following statement of the case is quoted from the opinion of the Court of Civil Appeals:

"E. Vanlaw, the deceased, was at the time of his death about 72 years of age. It appears that he left home when a boy; his nearest relatives being his half brothers and sisters, with whom he seems to have had little acquaintance. Prior to his settlement in Moore county, he seems to have traveled a great deal, and is described by the witnesses as being somewhat peculiar and eccentric. He is said to have been a miser, and frequently did not have enough to eat or sufficient clothes to protect him. In 1905, he abandoned his occupation as a veterinary surgeon and purchased five sections of land in Moore county, stocked it with cattle, and lived there until he was carried to Dalhart for medical treatment about a month before he died. He lived alone most of the time, but during a part of the time had a hired man on his place. For a number of years he had relied largely on the advice of Henry Boyce in the conduct of his business, consulting him frequently, and often referring to him in his conversations. He seems to have had very little to do with his relatives. John Geary attended to the handling and delivery of his cattle, and he usually called on F. Y. Adams for assistance and advice in the details of his daily business affairs. He had been suffering from an incurable malady for many years, and was a regular drinker; his death being ascribed to alcoholic poisoning of the brain. During the spring of 1911 he grew weaker, and his health was apparently failing. One of the witnesses testi-

fied that during this time he heard the testator say he did not think he would live very long; that it might have been a good thing to have given his property to orphan children, but, 'Henry, I expect, deserves it more than anybody else.' On July 5, 1911 (if the date of the writing is correct), the deceased sent Hammitt, his hired man, for F. Y. Adams, and had him write what is referred to as the Geary will, which is witnessed by Hammitt and Adams, whereby he bequeathed to John Geary $7,000, stating at this time, so Hammitt and Adams testify, that he already had Adams and Henry 'fixed.' He died on October 21, 1911. From September 20th to October 21st he was not rational except at intervals. One J. H. Lamb went to the Vanlaw house some time during the month of August, 1912, and in the upper room of the building found in a small box the sealed envelope on which was written, 'Henry Boyce,' and the word, 'Notes,' and advised Henry Boyce of this fact. Boyce visited the place and testified that he found the envelope offered in evidence in the box as described by Lamb; that he opened it and exhibited the contents to the parties who were with him at the time, such contents being the note and other writing offered in evidence for probate. The jury found that the writing on the envelope and that portion inclosed, except the printed portions of the note, were all written by E. Vanlaw; that thereby Vanlaw intended to make a gift to Henry Boyce and F. Y. Adams, effective upon his death; that he was at such time capable of knowing and understanding the nature of the act, and that the note was in existence at the time the words, 'Henry, please except this you and F. Y. Adams for the kindness shown me,' were written; that the note was what was referred to by the word 'this' used in said writing; and that it was not the intention of Vanlaw to revoke this gift by the execution of the Geary will."

The three instruments offered for probate by the plaintiff in error are set out above in their entirety. The first is the envelope addressed in the handwriting of the deceased to Henry Boyce. The second and third are the letter in the deceased's handwriting and the note filled in and signed by the deceased on a printed blank. The letter and note were sealed up in the envelope which was found in the manner and under the circumstances already stated. No question of fraud or undue influence is raised by the pleadings.

The vital questions to be determined are: First, whether parol evidence of extrinsic circumstances is admissible to aid in the construction of the instruments probated; second, whether the envelope and letter taken together constitute a holographic testamentary disposition of the inclosed note; and, third, whether the deceased by the execution of the Geary will intended thereby to revoke a bequest made to Boyce and Adams.

[1-3] The words addressed by the deceased to Henry Boyce are in effect, "Henry, please accept this, you and F. Y. Adams, for the kindness shown me." As expressive of an intention to make a gift, they are clear; as to when the gift is to become effective, the words are silent, and consequently of doubtful or uncertain meaning as to whether the deceased intended thereby a present gift or a gift testamentary. From the standpoint of the deceased, there were, generally speaking, but two times possible for the gift to become effective; the one before, and the other after, his death. Unless it is conclusive from the words used that the donor intended the gift to become effective before his death, there is necessarily some doubt on the face of the words themselves as to whether he intended the gift to become effective during his lifetime. To say that no doubt in this connection is raised by the words themselves is equivalent to saying that the words used could not, under any circumstances, be expressive of an intention to make a gift effective after death. In truth, the words are capable of expressing either intention. If Vanlaw had placed two $100 bills in the following missive addressed to Boyce, "Henry, please accept this, you and F. Y. Adams, when I am gone, for the kindness shown me," and had returned to his boyhood home before the writing was found by the donees, the conclusion would be inevitable (but not from the words alone) that the donor intended thereby a gift inter vivos. If, on the other hand, he pens the same words when in failing health, but with no intention of changing his earthly residence, and retains possession of the words and gift in an obscure part of his home where they are found after his death, the conclusion is then inevitable, or at least warranted (but not from the words alone), that the donor intended thereby a testamentary disposition. The words actually employed by the deceased and those used in the illustration are alike capable of expressing either intention, and are therefore of doubtful or uncertain meaning on their face. In fact, it is well-nigh impossible to consider in the abstract words expressive of an intention. Schouler on Wills (5th Ed.) § 567, after pointing out the "perilous discretion" of the court of framing another will, says:

"On the other hand, it shuns the equal danger of ignoring or perverting the rights of those interested under the will by treating the instrument too much as though it were some generic thing, a document, a product, without an individual author."

While our statute on wills requiring that they be in writing (except nuncupative) precludes ascribing to the testator any intention not expressed in the will, still there is an obligation to give effect to the intention which the will properly expounded contains. Therefore evidence is admissible which in effect simply explains what is written. The question is, not what the testator intended

to write, but what the meaning is of the words he wrote. Wigram on Wills, § 53. It is a general rule that, when the language of a will is clear, extrinsic evidence cannot be adduced to contradict, enlarge, explain, or qualify its meaning; but—

"Collateral evidence is freely admitted where the instrument itself is silent or equivocal, in order to show whether or not a testamentary disposition was actually intended. The facts of execution and delivery, the declaration of the maker at the time, and all the surrounding circumstances of the transaction, together with the instrument itself, may be considered in such connection." Schouler on Wills (5th Ed. published in 1915) § 273.

Another recent treatise on Wills (1917) says:

"The language of an instrument may be ambiguous or silent as to whether or not the maker intended it as a will, and therefore collateral evidence may be admitted to show the intent of the maker at the time of the execution of the paper. Such evidence cannot be admitted for the purpose of changing the provisions of the instrument, but is limited solely to the question of intent. Thus evidence of the circumstances surrounding the execution of the document and parol declarations by the maker, either at the time of the execution of the paper or subsequently thereto, may be received for such purpose, and so aid in determining the character of the instrument. If a paper had been executed but never delivered, evidence that the maker retained custody of it and kept the same in some safe place and frequently referred to it as his will, is competent as tending to prove that the instrument had been executed with testamentary intent. Such evidence, however, is not only limited to the single purpose of determining the intent of the maker of an instrument, but is admissible only where doubt as to its character appears on the face of the paper." Alexander on Wills, vol. 1, § 52.

The foregoing rule is not in conflict with the rule announced in Heidenheimer v. Bauman, 84 Tex. 174, 19 S. W. 382, 31 Am. St. Rep. 29. The question in that case was the proper construction of the residuary clauses of what was admittedly a will, in the light of the entire instrument. Judge Stayton states the questions for decision as follows:

"(1) Are the third and fourth paragraphs of the will inoperative if considered in the light of the entire will? (2) May they be aided by such testimony as was introduced?"

He further states:

"The evidence introduced was offered for the purpose of showing what the intention of the testator was as to the disposition of the residuum of his estate, and not for the purpose of enabling the court to carry out an intention clearly expressed in the will, but which might be applied to more than one person or thing on account of a latent ambiguity; and when offered for such a purpose we know of no rule

of evidence which justifies the admission of such testimony. To admit it and give effect to it would make a will, whatever the testimony of one or more witnesses may swear was intended by the testator, when the statute requires such intention to be manifested by a writing executed with the formalities prescribed."

The following language used by Judge Stayton immediately succeeding the foregoing quotations is not only consistent with the rule stated by Schouler and Alexander, supra, but so limits the rule in the Heidenheimer Case as to render it inapplicable to the facts of this case:

"Parol testimony is admissible often to enable a court to give effect to an intention expressed in a will; but it is unnecessary in this case to enumerate the purposes for which such evidence may be received, for such evidence is never admissible for the purpose of showing a testator's intention by proof of his oral declarations of intent, either as to the persons who shall take his estate, or as to what particular part of his estate any one person was intended to receive."

A case more nearly in point on the principle of construction announced by Schouler and Alexander, supra, is the case of Ferguson v. Ferguson, 27 Tex. 343, in which the question for decision was whether the instrument to be construed should be held a deed or will. The court says:

"In discussing the form and manner of making a will, the correct doctrine by which the courts are governed, in passing upon instruments of a doubtful or uncertain character, is thus aptly and forcibly expressed in Williams on Executors: 'The true principle to be deduced from the authorities appears to be that, if there is proof, either in the paper itself, or from clear evidence dehors, first, that it was the intention of the writer of the paper to convey the benefits by the instrument which would be conveyed by it if considered as a will; secondly, if death was the event that was to give effect to it, then, whatever may be its form, it may be admitted to probate as testamentary. And there seems to be this distinction in the consideration of papers which are in their terms dispositive, and those which are of an equivocal character, that the first will be entitled to probate, unless they are proved not to have been written animo testandi; whilst in the latter, the animus must be proved by the party claiming under them.' 1 Williams on Ex'rs, 87."

If a paper is executed by a donor clearly evidencing on its face an intention to make a gift inter vivos, but such gift is not consummated by delivery, the paper cannot by the aid of parol testimony be converted into a will in contravention of a statute requiring that a will be in writing; but if the donor executes a paper clearly evidencing an intention to make a gift, using words of doubtful and uncertain import as to whether a gift in the present or testamentary is

intended, but clearly consistent on their face with either intention, parol evidence, which in no respect changes, varies, or adds to a clear meaning the words used are capable of conveying, is admissible to determine the character of the writing. Ferguson v. Ferguson, Schouler on Wills, and Alexander on Wills, all cited above; Cock v. Cooke, L. R. l P. & D. 241; Jones v. Nicholay, 2 Robert. 292, 3 Sw. & Tr. 506; Robertson v. Smith, L. R. 2 P. & D. 43; Gage v. Gage, 12 N. H. 371; Wareham v. Sellers, 9 Gill & J. (Md.) 98; Tozer v. Jackson, 164 Pa. 373, 30 Atl. 400; Stewart v. Stewart, 177 Mass. 493, 59 N. E. 116; Jarman on Wills (6th Am. Ed.) p. 25. To interpret the deceased's language as conveying a gift inter vivos is to render it inconsistent with respect to the surrounding circumstances and inoperative; on the other hand, to construe his words on the envelope and in the letter as testamentary, not only does no violence to a clear meaning capable of being expressed by the words, but gives to them that force and effect which is, in the language of Mr. Wigram, "sensible with reference to extrinsic circumstances."

[4, 5] The statutes relating to wills require that a written will be attested by two witnesses unless wholly written by the testator. Manifestly, then, if the note referred to is considered a part of the letter of the deceased, the papers admitted to probate must fail as a will, not being attested, and the note being written partly in script and partly in the handwriting of the deceased.

The jury found that the note was in existence when the letter was written, and that the word "this," used in the letter, refers to the note. Such reference does not of itself incorporate the note into the letter and make it a part thereof; nor does the fact that the note was written at the same sitting make it a part of the letter. The deceased not only used no express words of incorporation, but, on the other hand, inscribed the word "notes" on the envelope, indicating thereby that it contained something within other than a letter. If the note had been discovered elsewhere under physical surroundings not suggestive of any connection with the letter, the reference would not be sufficient to identify it as the object therein referred to. The fact in evidence before the jury that the note was the thing, and the only thing, sealed up with the letter, is sufficient, in the absence of evidence to the contrary, to support the conclusion that the word "this" refers to the inclosed note. Fickle v. Snepp, 97 Ind. 289, 49 Am. Rep. 449; Fosselman v. Elder, 98 Pa. 168; Wilbar v. Smith, 5 Allen (Mass.) 196; Loring v. Sumner, 23 Pick. (Mass.) 98; Hunt v. Hunt, 4 N. H. 434, 17 Am. Dec. 438.

In the case of Fosselman v. Elder, the defendant had been named as the executor of the will of Elizabeth Fosselman. While the executor and appraisers were engaged in making an inventory of the deceased's estate, they discovered among her valuable papers a sealed envelope addressed to the plaintiff, on which were inscribed the following words: "Dear Bella: This is for you to open." The envelope on being opened was found to contain a letter and a promissory note. The note was executed by a third person payable to the order of the deceased due one year after date and bore the same date as the letter, to wit, October 2, 1879. The words of the letter referred to are as follows:

"My wish is for you to draw this 2,000 dollars for your own use should I die sudden."

The court say:

"On the trial, there was no dispute as to any of the material facts. It was conclusively proved by two witnesses that the indorsement on the envelope and the paper, of which the foregoing is a copy, were both in the handwriting of Mrs. Fosselman, and there was not the slightest evidence to cast any suspicion on the integrity of the transaction. The learned judge submitted the case to the jury, with instructions to render a verdict in favor of the plaintiff, unless they found that the said indorsement and paper were not genuine, or had been fraudulently altered; subject to the opinion of the court on the question, whether the paper of October 2, 1879, in connection with the accompanying note of same date, and the indorsement on the envelope is a testamentary disposition of the note or the proceeds thereof.

"In his opinion on the reserved question, the learned judge has conclusively shown that the paper referred to is testamentary in its character, intended to take effect upon the death of Mrs. Fosselman, and clearly designated the accompanying note as the subject of the bequest. These conclusions are so fully sustained by both reason and authority that it is unnecessary to add anything to what has been so well said, in the opinion of the court below, on that subject."

The concluding paragraph of the opinion is as follows:

"Without pursuing the subject further, we are of opinion that the inscription on the envelope should be read as the preface to and in connection with the paper inclosed therein, and that they together constitute a valid testamentary disposition of the accompanying note, operating as a codicil to the will of the testatrix."

As the finding of the jury goes no further than to establish the identity of the note referred to, we are of opinion that, in the absence of words of incorporation, the note does not any more constitute a part of the inclosed letter than would a note executed by a third person, or a coin, wrapped in the same missive. The difference in the character of the two bequests, the one a part of

the estate, the other a charge upon it, is not pertinent in determining whether the gift in either case is a part of the donor's words conveying it.

[6, 7] The term "this notes" (formulated in consequence of the word of designation, "this," used in the letter, and the word "notes" inscribed on the envelope) constitutes a patent ambiguity, in the broad sense of that term as used by Lord Bacon; but it is not such an ambiguity as remains unmeaning in the light of the extrinsic circumstances. The note itself is made payable to the two persons, while the envelope is addressed to only one of those persons. There is .but one note, but it is in effect a double note, a note for Boyce and a note for Adams. The words are not ambiguous to the extent that they .are unmeaning, or inconsistent with themselves to the extent that parol evidence is not admissible to aid in making clear what they mean. Ferguson v. Ferguson, supra; Cyc. vol. 17, pp. 680–682; Jones on Evidence, § 473; Meyers v. Maverick, 28 S. W. 716; Page on Wills, 998; Schouler on Wills, § 581; Gardner on Wills, 388. The courts are reluctant to declare wills, as well as contracts, void for uncertainty. They have in cases in which no question of fraud arises resorted to "every shift," rather than declare the gift void for such reason. Doe ex dem. Winter .v. Parratt, 6 Man. G. 362. While doubtless not a wise policy to go to such extreme to effectuate an uncertain intention, it is safe to follow the rule announced in Jones on Evidence that—

"It is only when the instrument is unintelligible or uncertain after the extrinsic evidence as to the situation of the parties and the surrounding circumstances have been received, that a true patent ambiguity is established." Jones on Evidence, vol. 1, § 474.

The envelope and letter are, taken together, a complete dispositive document, and, being wholly in the handwriting of the deceased, are valid as a holographic will.

[8-10] The instrument known as the Geary will bears date July 5, 1911, and is as follows:

"State of Texas, County of Moore.
"Know all men by these presents, that E. Vanlaw has wild John Geary seven thousand dollars at my death the rest of my property to my bodily airs written by F. Y. Adams.
                    "[Signed] E. Vanlaw.
"Witness by   F. Y. Adams.
        "Bob Hammitt."

Whether the testator intended by the foregoing instrument to revoke the Boyce and Adams will is the remaining question to be determined.

The Geary will contains no revocation in express terms of any other will; and unless the general phrase "the rest of my property to my bodily airs" constitutes an implied revocation of the specific legacies to Boyce and Adams, it is not revocable in its character. The disposition of property by different wills will be sustained unless the inconsistency is such that the wills cannot stand together. A later will revokes a former only when, and to the extent, it is inconsistent with the former. Schouler on Wills (5th Ed.) § 407; Gordon v. Whitlock, 92 Va. 723, 24 S. E. 342. The rule is announced in Williams on Executors (7th Am. Ed.) 212, as follows:

"The mere fact of making a subsequent testamentary paper does not work a total revocation of a prior one, unless the later expressly or in effect revokes the former, or the two be incapable of standing together, for though it be a maxim, as Swinburne says, that 'no man can die with two testaments'; yet any number of instruments, whatever be their relative dates, or in whatever form may be (so as they be all clearly testamentary), may be admitted to probate as together containing the last will of the deceased. And if a subsequent testamentary paper, whether in form a will or a codicil, be partially inconsistent with one of an earlier date, then such later instrument will revoke the former as to those parts only where they are inconsistent. * * * The two are to be taken together as forming one will, unless the circumstances under which the last will was made prohibits such a condition, or the conditions of the two wills are so repugnant and inconsistent that they may not stand together. In this connection we will say that the court erred in striking out the testimony concerning the conversation that took place at the time of the execution of the last will, and the testimony of witness Hannington. The conversation was a part of the subject-matter, and was admissible for the purpose of determining the intention of the testator in relation to the will which was then in existence and of the facts and circumstances attending the execution of the wills. 1 Underhill on Wills, 39."

The residuary clause of the Geary will, general as it is in its nature, even if it be conceded that by "bodily airs" the half brothers and sisters are referred to, could not be held to prevail over the specific bequests to the legatees named. Alexander on Wills, vol. 1, § 679.

[11] That Vanlaw executed the Geary will not later than two days after writing the Boyce and Adams letter; that he was 72 years of age, unmarried, and childless, under obligation to and kindly disposed toward Geary, Adams, and Boyce; that at the time of executing the Geary will he stated he had already "fixed" Boyce and Adams; that he left home when a boy and had had but little to do with his relatives, the nearest of whom were of the half-blood—these and other facts, recited in the statement quoted from the Court of Civil Appeals, were in evidence, and support the finding of the jury that it was not the intention of Vanlaw by the execution of the Geary will

to revoke the bequest made to Boyce and Adams. The effect of this finding, together with the other findings of the jury, is consistent with the view that it was the intention of Vanlaw by his several writings to make a complete testamentary disposition of his estate as follows: To Boyce, Adams, and Geary, $7,000 each and the remainder of his property to those referred to as his bodily heirs. Such intention is entirely consistent with a meaning capable of being expressed by the writings probated without variance thereof or addition thereto, and in our opinion should be effectuated.

We recommend, therefore, that that part of the judgment of the Court of Civil Appeals denying probate to the Boyce-Adams will be reversed, and that the judgment of the trial court and that part of the judgment of the Court of Civil Appeals admitting to probate the Geary will, be affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

---

(85 Tex. Cr. R. 505)

JACOBS v. STATE.    (No. 5371.)

(Court of Criminal Appeals of Texas. June 4, 1919. On Motion for Rehearing, June 25, 1919.)

1. ATTORNEY AND CLIENT ⬅92 — CRIMINAL LAW ⬅902 — TIME OF GIVING INSTRUCTIONS—WAIVER—AUTHORITY OF COUNSEL.

Under Code Cr. Proc. 1911, art. 22, permitting defendant to waive any right except trial by jury, one accused of homicide could agree to correction of the charge, and is bound by an agreement of his counsel to the giving of a charge defining malice aforethought after the argument.

2. HOMICIDE ⬅309(4)—INSTRUCTIONS—MANSLAUGHTER—EVIDENCE.

In prosecution for homicide, evidence that accused, when greatly excited, mistook deceased for a man who had been in the house with accused's wife after midnight, held to require an instruction on manslaughter.

3. HOMICIDE ⬅60—MANSLAUGHTER—INTENTION TO KILL ANOTHER.

Where accused shot a person approaching him, mistakenly believing it to be a man the killing of whom under the circumstances would have been manslaughter, he can be convicted of manslaughter.

4. HOMICIDE ⬅302—INSTRUCTIONS—APPLICABILITY TO EVIDENCE—INTENTION IN SHOOTING.

It was not error to refuse a requested charge that, if defendant shot to stop or scare a man he had theretofore seen in his house, he could not be guilty, where there was no evidence of such intention.

On Motion for Rehearing.

5. HOMICIDE ⬅250—EVIDENCE—MANSLAUGHTER.

In a prosecution for homicide, evidence that defendant shot deceased under the mistaken belief that he was shooting a man who had been in the house with the wife of accused after midnight held sufficient to sustain a conviction for manslaughter.

6. CRIMINAL LAW ⬅822(1)—INSTRUCTIONS—CONSIDERATION AS A WHOLE.

Where only part of court's charge was excepted to, the court will look to the entire charge to determine the sufficiency of the portion excepted to.

7. CRIMINAL LAW ⬅823(17)—INSTRUCTIONS—MANSLAUGHTER.

An exception to the court's charge on manslaughter as allowing the jury to consider only the provocation arising at the time cannot be sustained, where the court further charged that, in determining the adequacy of the provocation, the jury should consider all the evidence in determining the condition of the defendant's mind.

8. CRIMINAL LAW ⬅829(4)—HOMICIDE ⬅302—INSTRUCTIONS — ATTEMPT TO KILL INTRUDER.

The refusal of a requested charge that, if defendant shot to stop or scare a stranger he had just seen at his house, he should be acquitted, was not error, where defendant did not claim he shot merely to scare, and the court, at defendant's request, authorized acquittal if the jury found defendant called on the intruder to stop; and that his pistol was accidentally discharged.

Appeal from District Court, Grayson County; F. E. Wilcox, Judge.

A. L. Jacobs was convicted of manslaughter, and he appeals. Affirmed, and motion for rehearing overruled.

E. J. Smith, of Denison, for appellant.
E. A. Berry, Asst. Atty. Gen., for the State.

LATTIMORE, J. The appellant was convicted in the district court of Grayson county of the offense of manslaughter, and his punishment fixed at two years' confinement in the penitentiary. The facts sufficiently appear in the opinion.

[1] The first complaint is of the fact that the trial court gave to the jury a charge defining "malice aforethought" after the argument was concluded. The bill of exceptions taken to this action of the court in giving said charge contains the following statement, as a part of the main bill prepared and presented by appellant to the court below, to wit: "The reading to the jury of this charge after the argument was concluded was agreed to by defendant's counsel." Under the authority of Nowlin v. State, 76 Tex. Cr. R. 480, 175 S. W. 1070, the trial court could so correct his charge after the argument was con-