### RHODEN et al. v. BERGMAN et al.
### No. 2572.

Court of Civil Appeals of Texas. Beaumont.
Nov. 7, 1934.

Rehearing Denied Nov. 14, 1934.

Campbell, Murphy & Cochran, of Livingston, C. F. Stevens, of Houston, E. B. Pickett, Jr., of Liberty, and Shields & Johnson, Sewell, Taylor, Morris & Garwood, all of Houston, for appellees.

WALKER, Chief Justice.

Appellants are the heirs and all the heirs of Ely and Unity Rhoden, deceased. The suit involved the title and possession of a survey of 160 acres of land in Polk county, patented to William Davis on the 26th of September, 1863, by the following field notes:

"One hundred and Sixty acres, more or less.

"Beginning at a stake the N. W. corner of J. C. Pitts 160 acres preemption survey on Shadburns South line a post oak brs. S. 55 W. 11 7/10 varas and another brs. N. 40 E. 6 4/10 varas.

"Thence west with said line 907 varas to a corner of said Shadburn's survey.

"Thence S. 31½ E. with said survey 614 varas to a corner of the same.

"Thence South 58½ W. with said survey 520 varas to a stake the north corner of J. S. McAdies 1280 acre survey.

"Thence South on the East line of said survey 276 varas to N. W. corner of Rail Road Section No. 20.

"Thence East crossing the branch 1020 varas to said Pitts S. W. corner.

"Thence North with his West line 300 varas branch 1070 varas to the beginning,"
—and conveyed by Davis to Ely Rhoden by deed dated December 10, 1866. By warranty deed dated the 18th of December, 1876, Ely Rhoden and his wife conveyed to Jesse Rhoden 80 acres of land out of the Wm. Davis survey under the following description:

"Eighty acres of land more or less, lying in Polk County and State of Texas and known as a part of the William Davis Survey;

"Beginning at the South west corner of the William Davis survey and said line running east to a light wood stake none as a corner;

"Thence running North to the water hold branch black gum tree none as a corner;

"Thence running with said branch to a post oak none as a corner;

"Thence running to the North west corner of the William Davis survey;

"Thence running on said line to the Southwest corner of the said William Davis survey."

Jones &· Lowe and V. A. Collins, all of Livingston, for appellants.

By warranty deed dated the 23d day of August, 1879, Ely Rhoden conveyed to Joseph Hogan the following described tract of land out of the William Davis survey:

"The one hundred acres off of a track of land patented to W. W. Davis by the State of Texas on the 26th day of Sept., 1863, and sold by W. W. Davis to Ely Rhoden December 10th, 1866, this 100 acres is the N. E. part of said track of land and joining the John Pitts on the East and Rail Road lands on the South."

As plaintiffs below, appellants claimed the William Davis survey of 160 acres of land, on the ground that the deeds to Jesse Rhoden and Joseph Hogan were void for want of description. Appellees claimed the land as grantees under Jesse Rhoden and Joseph Hogan on the contentions (a) that the Jesse Rhoden and Joseph Hogan deeds were valid and (b) on the issue of ten-year limitation. The trial was to a jury and judgment was entered on an instructed verdict in favor of appellees, sustaining both of their theories of title. Appellants have duly appealed from that judgment, predicating their appeal upon eleven propositions, presenting the following points: First. (a) The deeds to Jesse Rhoden and Joseph Hogan were void as being patently defective; (b) if in error in that contention, then they were void because the land described in these deeds cannot be identified on the ground by extraneous evidence; (c) if in error in that contention, then the extraneous evidence merely raised an issue of identity and the court committed reversible error in failing and refusing to submit that issue to the jury. Second, appellees failed to sustain, as a matter of law, their defense of limitation.

We discuss, first, the deed to Jesse Rhoden, dated the 18th of December, 1876. It is not controverted that the parties to that deed used the word "none" in the sense of "known" and by "water hold branch" meant "Water Hole Branch." This branch crossed the survey in practically a straight line, running in a southeasterly direction from where it enters the survey on the north boundary line. The branch crosses the north boundary line about 200 varas east of the northwest corner; and the east boundary line about the same distance north of the southeast corner. For more than fifty years this branch has been known in that part of Polk county as "Water Hole Branch." The "light wood stake," identified as being at the southeast corner of the Jesse Rhoden tract, was not found, nor was the post oak, identified as being at the end of the line "running with said branch."

Appellees marked out on the ground and contended that the following described tract of land was the 80 acres conveyed to Jesse Rhoden. They began at the southwest corner of the Davis survey, as called for in the Jesse Rhoden deed. From that point they ran east on the south boundary line, 607 varas for a corner. While the Jesse Rhoden deed does not call to run east with the south boundary line of the Davis survey, the call to run "east," as a matter of fact, compelled appellees to run with the south boundary line of the original survey. From the corner established at the end of the 607-vara line, appellees ran a line due north 724.04 varas to a point on Water Hole Branch. At that point was found a black gum tree marked with "an old X." The evidence was sufficient to sustain a conclusion that this black gum was old enough to have been marked in 1876. S. T. Coats, conceded by all parties to be an expert surveyor, said of the cross on that tree, "The cross has the appearance of being old; I judge that cross was put on the tree when the field notes were made." This witness testified further that there was "one other tree, evidently intended for a witness tree where the black gum was mentioned. It was 25 feet from this first black gum that has a cross on it. It has a large blaze over there, over above the blaze it has three hacks." From the black gum tree appellees extended their line in a northwest direction, running with Water Hole Branch to the point where it crosses the north boundary line of the original survey, for a corner. At no point on that line was a post oak found, identified as the one called for in the Jesse Rhoden deed. From that point on the north boundary line appellees extended their line to the northwest corner of the original survey, thence with the west line of the survey, to the place of beginning. As thus surveyed and located, the tract of land claimed by appellees contained 79.64 acres of land.

It cannot be seriously contended that the Jesse Rhoden deed was void on its face, because of defective description. The description is complete; and by the calls for course and distance and for objects on the ground known to the parties at the time the deed was written, a specific tract of land was designated. There is not a scintilla of evidence in the record to the effect that the parties to the deed did not know and recognize the location on the ground of the objects called for. In Miller v. Hodges, 260 S. W. 168, 170, the Commission of Appeals said:

"In 8 R. C. L. p. 1074, it is said: 'The sole purpose of a description of land, as contained in a deed of conveyance, being to identify the

subject-matter of the grant, a deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey.' This general rule has been many times stated by our courts."

 If we correctly interpret appellants' brief, their proposition that the deed was void on its face is based upon the following call, "Thence running with said branch to a post oak none as a corner." The argument is that this call runs down the branch, "away from the northwest corner of the said Davis and would never close." This proposition does violence to the terms of the deed. No direction is given in this call, merely the description "running with said branch"; it does not read "up" nor "down." To go up the branch and thence to the northwest corner of the survey closes the calls of the deed, gives effect to the call for the northwest corner, and does violence to no other call. To run down the branch, as appellants construe the deed, would make impossible the call for the northwest corner of the survey. The construction contended for by appellees being reasonable and not conflicting to the least extent with the calls of the deed, should be adopted rather than the construction contended for by appellants, which would render the deed void on its face. Waterhouse v. Gallup (Tex. Civ. App.) 178 S. W. 773, 776.

 Did the evidence offered by appellees identify on the ground the 80 acres conveyed to Jesse Rhoden? The first inquiry is as to the intention of the parties to the deed. That the intention of Ely Rhoden was to convey 80 acres of land out of the western side of the William Davis survey of 160 acres of land to Jesse Rhoden cannot be denied. Where a deed in writing is voluntarily executed between private parties, our Supreme Court said, in Cook v. Oliver, 83 Tex. 562, 19 S. W. 161, 162, that "the presumption should be indulged in that some interest should pass." In that case the Supreme Court recognized that this rule can be given application only "where the deed is not void for the want of certainty in the description." We have disposed of that point by our conclusion above that the Jesse Rhoden deed was not void for want of description. See, also, Walker v. Gore (Tex. Civ. App.) 257 S. W. 322, 324; Adams v. Maris (Tex. Com. App.) 213 S. W. 622, 627;, Pierson v. Sanger Bros., 93 Tex. 163, 53 S. W. 1012; Reynolds v. McMan Oil & Gas Co. (Tex. Com. App.) 11 S.W.(2d) 778, 781; Pitts v. Camp County, 120 Tex. 558, 39 S.W.(2d) 608, 615;

Lacey v. State Banking Board, 118 Tex. 91, 11 S.W.(2d) 496; Gibbs v. Barclay (Tex. Com. App.) 242 S. W. 462, 463.

In ascertaining the intention of the parties to a deed, Judge Greenwood, speaking for the Supreme Court in Marcus v. Armer, 117 Tex. 368, 5 S.W.(2d) 960, 963, 60 A. L. R. 672, said: "A writing ought certainly to be interpreted to mean what all parties to it intend and understand it to mean." However, in ascertaining the intention of the parties to a deed, the general rule must be recognized that "nothing passes by deed except what is described in it, whatever the intention of the parties may have been." Buie v. Miller (Tex. Civ. App.) 216 S. W. 630, 633.

It does no violence to, but effectuates the language of the deed, to deduce the intention that Ely Rhoden executed the deed to Jesse Rhoden for the purpose of conveying to him 80 acres out of the western side of the William Davis survey, bounded on the west, from the northwest corner to the southwest corner, by the western boundary line of the survey, and on the south, running east from the southwest corner, by the south boundary line of the survey.

The difficulty in applying the calls of this deed to any specific tract of land arises from the omission of the call for distance from its southwest corner to its southeast corner, on the south boundary line of the original survey; and in the call for distance from the black gum tree to the post oak; and the failure to designate with more certainty the post oak corner. It is apparent from reading the Jesse Rhoden deed that the parties thereto were unlearned men but, notwithstanding that fact, they used language making certain the intent to convey a specific tract of land, the location on the ground being known and recognized by them at the time the deed was executed.

 The defects in the description are all omissions of proper calls and not the inclusion in the deed of conflicting and destructive calls. Where the description written into a deed is patently defective, the courts are required to correct the error and to supply the omissions necessary to identify the land, so as to give effect to the grantor's intention, where, by doing so, no unreasonable violence is done to the specific calls of the deed, and where the additions are reasonably supported by the specific calls. Mansel v. Castles, 93 Tex. 414, 55 S. W. 559, 560; Poitevent v. Scarborough, 103 Tex. 114, 124 S. W. 87; Carlisle & Co. v. King, 103 Tex. 624, 133 S. W. 241; Miller v. Hodges (Tex. Com. App.) 260 S. W.

168, 170; Battle v. Wolfe (Tex. Civ. App.) 283 S. W. 1073, 1076, 1077; Holman v. Houston Oil Co. (Tex. Civ. App.) 152 S. W. 885; Cleveland v. Shaw (Tex. Civ. App.) 119 S. W. 883, 884, and Fortenberry v. Cruse (Tex. Civ. App.) 199 S. W. 523, 524. It was said by our Supreme Court in Mansel v. Castles, supra, that the additions need not be "capable of mathematical demonstration," but only such as will make "reasonably certain" the identification of the land the parties intended to convey. Our courts are so reluctant to declare deeds void for want of description that it has been said they will resort to "every shift" in order to escape that result. Adams v. Maris, supra. In recognition of that proposition, our Supreme Court said in Poitevent v. Scarborough, 103 Tex. 114, 124 S. W. 87, 88:

"The rule for construction of deeds is: That, where there is an evident mistake in the calls, the court must, if practicable, find and correct the error, so as to give effect to the deed."

In that case the Supreme Court corrected the call "thence B. 49W," which was patently erroneous. In Fortenberry v. Cruse, supra, the court said: "An inspection of the deed shows an obvious omission of two calls which may be supplied with reasonable certainty." In Cleveland v. Shaw, supra, the court corrected the deed by supplying an omitted line on the proposition: "The rule is well settled that, where the deed on its face describes the land conveyed with reasonable certainty to enable the vendee to identify it by the aid of extrinsic evidence, it is valid and admissible in evidence." In Battle v. Wolfe, supra, the court quoted the following: "The description will be liberally construed to afford the basis of a valid grant. * *· * A manifest omission in a description may be supplied by construction when the deed furnishes sufficient data for this purpose."

■ Applying these principles to the Jesse Rhoden deed, we have the west boundary line, the northwest corner, and the southwest corner identified beyond dispute. We have a call, capable of identification on the ground, to run east from the southwest corner of the original survey. "The light wood stake" is missing and, therefore, the call for distance from the southwest corner must be supplied. There was found on Water Hole Branch a black gum tree, bearing a land mark indicating a corner, and 25 feet directly south of that tree another black gum marked as a witness tree. By running south from the black gum tree to the south boundary line of the original survey 724.04 varas, no violence is done to the specific calls of the deed, but the call to run north from the south boundary line is effectuated; and a south line for the 80 acres is established, running from the southwest corner of the original survey a distance of 607 varas. From what we have said above, it is reasonably certain that the lines of the survey must run north from the black gum tree with Water Hole Branch. There is nothing in the deed stopping this line at any point short of the north boundary line. So no violence is done to the specific calls by extending this line to an intersection with the north boundary line of the original survey, for a corner. With this corner established, the other calls of the deed furnish a complete description to the 80 acres of land. Of course, these additions are not "capable of mathematical demonstration," but they are reasonably practicable. The result is to locate the 80 acres in the western part of the survey, effectuating the intention of the parties, and to give the deed almost its full quota of 80 acres. The result recognizes a black gum tree, located on Water Hole Branch, as called for in the deed, the only one marked in that section of the country as a land corner. Aided by extrinsic evidence, on the authorities cited, it is our conclusion that the Jesse Rhoden deed conveyed to him the 80 acres of land claimed by appellees.

■ We now come to the Joseph Hogan deed, the description given in the statement above. At the date of that deed Ely Rhoden was not the owner of 100 acres of the William Davis survey but of only 80 acres, having previously sold 80 acres to Jesse Rhoden. The deed calls for 100 acres in "the northeast part" of the survey. Appellants' proposition that the call for the "northeast part" is indefinite and uncertain is denied. The north boundary line of the Jesse Rhoden 80 acres, on the west side of the survey, is only 200 varas long. The south boundary line of that tract, 607 varas long, consumes about two-thirds of the length of the south boundary line of the original survey. It thus appears that while it is not strictly accurate to designate the tract of land conveyed to Joseph Hogan as being in the northeast part of the survey, the description has a certain application to the remaining portion of the original survey. The other calls of the Hogan deed make it certain that the parties intended to convey the entire eastern portion of the original survey. Thus it calls for the "railroad lands" on the south and the John Pitts on the east. The John Pitts corners with the William Davis at its extreme northeast and southeast

corners and the west line of the Pitts is a common line with the east line of the Davis. So it is reasonably certain that the tract of land conveyed was to extend from the northeast to the southeast corners of the original survey.

Appellants also criticize the call for "railroad lands on the south." Appellees concede that the railroad lands on the south of the Davis survey lie immediately south of the Jesse Rhoden tract without touching the Hogan tract. The Jesse Bartee survey lies south of that portion of the Davis survey, claimed by appellees as being conveyed by the Hogan deed. This call does not render the deed void. It is correct when applied to the south boundary line of the original survey.

The following facts were established beyond controversy: At one time Ely Rhoden owned the Davis 160 acres; in 1876 he sold 80 acres, identified, on the conclusion stated above, as being the western half of the survey; that sale left him owning only 80 acres in the eastern part of the original survey, or, as he designated it, "in the N. E. part." By the Hogan deed, calling for 100 acres, it was the clear intention of Rhoden to sell to Hogan a specific portion of the original survey. The authorities support the conclusion that he sold to Hogan the balance of his interest in the original survey. Thus in Blackburn v. McDonald, 1 Posey, Unrep. Cas. 355, the court said:

"Where land in a deed is described by number of acres, grant and county, and the grantor owned, at the date of his grant, that or a less number of acres, the deed will convey the land, such facts being shown."

In that case the court sustained the following description:

"Lying and being situated in the county of Robertson and state of Texas, it being a part of the headright of H. Reed and containing five hundred and forty acres."

In Huffman v. Eastham, 19 Tex. Civ. App. 227, 47 S. W. 35, the court gave controlling effect to the fact that the grantor owned a specific tract of land falling within the general description of his deed. The court said:

"Where two parcels of land were of the same description, a deed using the common description, by one having an interest in one parcel only, conveyed the parcel to which grantor had title."

Hunter v. Morse's Heirs, 49 Tex. 219, is directly in point in support of the description in the Hogan deed. In that case the Supreme Court sustained the following description: "All and singular a certain piece or parcel of land, containing 1,000 acres, and described as follows: In Harris county, and on Buffalo Bayou, adjoining the city of Houston, being the undivided part of the league granted to Allen C. Reynolds." On the authorities cited we cannot escape the conclusion that the description in the Hogan deed was sufficient to convey to Hogan the 80 acres of land owned by Ely Rhoden in the William Davis survey at the time of its execution. Since the deeds out of appellants' ancestors were valid, it follows that they had no title to the land in controversy and, therefore, the trial court correctly instructed a verdict against them in favor of appellees. This conclusion disposes of the case without relation to the issue of limitation.

It was the duty of the court and not the jury to construe these deeds. When aided by the extrinsic evidence, neither of them was ambiguous nor indefinite nor uncertain in designating the land conveyed. The additions to the description created no conflict with the specific calls of the deeds. In Moore v. Wooten, 280 S. W. 742, 747, the Supreme Court said:

"It is the province of the court, and not the jury or the court sitting as a jury, to construe and determine the legal effect of instruments of writing. Shepherd v. White, 11 Tex. 346; Little v. Birdwell, 21 Tex. 597, 73 Am. Dec. 242."

See, also, Cook v. Dennis, 61 Tex. 246; Chapman v. Head (Tex. Civ. App.) 279 S. W. 906, 907; Warner v. Patton (Tex. Civ. App.) 19 S.W.(2d) 1111, 1112; Walker v. Maynard (Tex. Civ. App.) 31 S.W.(2d) 168, 170.

It is ordered that the judgment of the lower court be in all things affirmed.

## On Motion for Rehearing.

At the request of appellees we find that "there were black gums all up and down Water Hole Branch," and we further find that the circumstances stated in the opinion constituted all the proof of identification of the black gum marked with the X. In all other respects the motion for rehearing is overruled.