## J. W. BERRY, ADM'R OF GODDARD, V. B. F. WRIGHT.

Where the description in a conveyance is sufficient to render the land capable of being ascertained and identified, it is sufficient.

The falsity of a part of the description does not vitiate the deed, when from the whole, the land conveyed may be certainly ascertained.

A call for a corner between two proprietors as a beginning corner is good, although such corner may not have been established, provided the titles of the two proprietors furnish the data for its establishment.

Where the husband in 1838 conveyed his headright certificate to a locator, and took the bond of the latter to convey one-half of it to his wife as soon as patent should be issued, and in September, 1848, the conveyance was made to the wife accordingly, it was held that a conveyance made by the husband in January, 1848, to part of the land, was valid, on the ground that the land was community property, and not the separate property of the wife.

Error from Ellis. Suit by the appellee against the appellant, to recover one thousand acres of land, part of the headright of Edward Ferris, deceased. On the 10th of February, 1838, Ferris having employed one Slaughter to locate and patent his headright for one league of land, and transferred his certificate to said Slaughter for that purpose, took a bond from Slaughter to convey one-half of the land to his, Ferris's, wife, as soon as a patent should be issued. This bond was not in evidence, and it did not appear whether it contained any stipulation as to the mode in which the league should be divided. On the 16th of February, 1846, a patent was issued, the league fronting on the Trinity River and running back (S. 60 ° W.) for quantity. On the 31st of January, 1848, Ferris sold to plaintiff the one thousand acres now in controversy, describing them as follows : " commencing at the corner (on the back line " of said league) of the division line between said Ferris and " the heirs of Slaughter, or G. W. Hill, including a sufficiency " of the back end of the lower half of said league, so as to make " one thousand acres." Afterwards, on the 2nd of September, 1848, G. W. Hill, as executor of Slaughter, in pursuance of the

bond of Slaughter and of directions in his will, conveyed one-half of the league to Ferris's wife. This deed conveyed the one-half of the league fronting on the river, including the whole front.* The defendant claimed by purchase from Mrs. Ferris, but as it was proved that he had actual notice of the sale to Wright, the particulars are not material. Ferris died in 1849. The division line between Slaughter's heirs and Ferris was run in the Fall or Winter of 1848.

The Court charged the jury, among other matters, in substance, that the deed of Mrs. Ferris did not pass any title to Goddard, because her husband had not joined in it.

*J. W. Berry,* for plaintiff in error. In this cause the plaintiff relies for a reversal of the judgment of the District Court, 1st. Because the calls of B. F. Wright's deed are not sufficiently certain to identify the land he claims. He calls to commence at the back line of said Ferris's league, at the division line between said Ferris and the heirs of Slaughter, and it is evident that the back line of said league is the west line of the same, as stated in the case of Parker v. Chance and wife, (11 Tex. R. 513,) in the statement of the case. And it is further in proof in this cause, that the division line between the heirs of Slaughter and Ferris was not run until long subsequent to the date of B. F. Wright's deed; and it is certainly evident from reading the deed itself, that the inevitable conclusion would be, that if the land claimed by B. F. Wright is capable of identity at all, it lies in the south-west corner of the Ferris league, and takes a thousand acres there.

Even if Goddard had had actual notice that B. F. Wright owned a thousand acres in the south-west corner of said Ferris league, it certainly would be no ground to avoid Goddard's

NOTE.—*It is obvious that the deed from Ferris to Wright contemplated a division of the land between Slaughter and Ferris, by a line running from the river to the back line, Ferris to take the lower half; and that the difficulty in this case proceeded from the making of the division by a line which gave the back half to Slaughter and the front half to Ferris.—REPS.

deed to the north-east half league, with which said one thousand acres could not conflict.

The second and third charges of the Court are manifestly against the doctrine laid down by the Court in the case of Thomas v. Chance, (11 Tex. R. 634,) when this same title came in review in this Court, and was calculated to mislead the jury.

*Burford & Good*, for defendant in error.   I. Although Slaughter's bond was made to Mrs. Ferris, and the deed from Hill was made to her, yet the land acquired by said deed and bond was community property.   (11 Tex. R. 513; 3 Id. 433.)

II. The land sold to Wright by Edward Ferris, being the same land sold by Lucy Ferris to Goddard, was not the separate property of the said Lucy, but was community property, over the disposition of which, during her husband's life, she had no control.   (11 Tex. R. 635; Hart. Dig. Art. 2422.)

III. The Court did not err in charging the jury that if the deed to Wright described the land so that it might be identified, the same was good, though the lines had never been run when the deed was made.   (4 Kent, 456.)

IV. The Court alone was competent to construe and determine the legal effect of the deed from Ferris to Wright.

WHEELER, J.   The ground mainly relied on for a reversal of the judgment, is that the deed from Ferris to the plaintiff did not contain a sufficient description of the land intended to be conveyed.   It is as follows : " Commencing at the corner, " on the back line of said league, of the division line between " said Ferris and the heirs of Slaughter, or G. W. Hill, includ " ing a sufficiency of the back end of the lower half of said " league, so as to make one thousand acres."   It is insisted that, as the back line of the league is its west line, this call requires the land to be taken in the south-west corner of the league, instead of the west end of the half league of Ferris, which the actual survey, made in pursuance of the order of Court, includes.   But that such is not the intention of the con-

veyance is manifest, for it calls for the division line between Ferris and the heirs of Slaughter, which divides the east from the west end of the league, and it includes a thousand acres of the "back end of the lower half of said league," which is the east half of the league, belonging to Ferris. And, of course, the "back end" of that half league, must be the west end or portion of it, which would be impossible if the west line of the league had been intended. It is evident, therefore, that it was not the west line of the league, but of the half league, belonging to Ferris which was meant, though the "back line of said league" is mentioned. The description is less perspicuous certainly than it might have been, but there really is no difficulty in understanding what land was intended to be conveyed. And that it should be capable of being ascertained and identified, is all that is requisite to the validity of the conveyance. The falsity of a part of the description does not vitiate the deed, when from the whole, the land conveyed may be certainly ascertained. According to the maxim of Lord Bacon, "*falsa demonstratio non nocet*," when the thing itself is certainly described ; as, in the instance of the farm called A, now in the occupation of B. Here the farm is designated certainly as farm A ; but the demonstration would be false if C and not B was the occupant; and yet it would not vitiate the grant. (4 Kent, 467 ; Cro. C. 447, 473 ; 7 Johns. R. 217.)

It is further insisted that at the date of the plaintiff's conveyance, the division line between Ferris and Slaughter's heirs, had not been actually run. However the fact may be, it does not vitiate the deed, when it was capable of being ascertained with certainty where it would run. Though but an imaginary line at the time when run, it ascertained the locality of the plaintiff's thousand acres, as certainly as if it had been previously run and marked.

The objection to the plaintiff's title, that it does not with sufficient certainty describe and identify the land conveyed, is not well founded.

Nor is there any ground for the supposition, that the charge

of the Court, considered in reference to the facts in evidence, was not conformable to the doctrines and opinion maintained by this Court in the case of Thomas v. Chance. (11 Tex. R. 634.) In that case it was said, "The deed from Lucy Ferris "to Goddard, considered merely as her own act, without the "assent or authority of her husband, express or implied, would "not convey title." (Id. 637.) And that is this case, as here presented by the evidence. There was no evidence of the assent of the husband, express or implied, to the making of the deed by Mrs. Ferris to Goddard. And hence there was no occasion for the application of the doctrine, justly maintained in the case of Thomas v. Chance, as to the effect of such assent on the part of the husband. It is scarcely necessary to say that every case must be tried upon its own facts, as given in evidence upon the trial; and that the charge of the Court is to be taken and understood in its application to the evidence, and not in reference to a different state of facts proved in another case.

But if the charge of the Court in respect to the relative nature of the deeds of Ferris and his wife, were erroneous, it would not be material in this case; as it cannot be questioned, that Ferris had the power to convey by deed, previous to the conveyance by his wife, and it is in evidence that Goddard took the conveyance from Mrs. Ferris with actual knowledge of the prior conveyance to the plaintiff, by her husband. Under the evidence in the case, a different verdict could not have been legally rendered; and we are of opinion that there is no error in the judgment and that it be affirmed.

Judgment affirmed.