## C. W. MERVIN v. N. MURPHY AND ANOTHER.

1. In a mortgage of improvements on a city lot, the improvements themselves were described with certainty, but the number of the lot was misstated. *Held*, that the maxim *falsa demonstratio non nocet* applies, and the mortgage is good as between the parties, and as against a subsequent incumbrancer who had knowledge of the facts respecting the mortgage.

2. See this case for an apt illustration of the distinction established by the Supreme Court of the United States in Hunt v. Rousmaniere, 1 Peters, 1, between a power coupled with an interest in the thing itself, and a power coupled with an interest only in the proceeds of the thing.

3. On November 5, 1867, J. promised in writing to pay to the plaintiff, two months after date, $650 purchase money of improvements on a city lot, and further stipulated that in case she, J., should die, or refuse or neglect to pay, then the plaintiff should "have the power to appoint a trustee in writing, and such trustee shall have power to sell the aforesaid improvements for cash, and, when sold, in his capacity as trustee, to make good title to the purchaser," the net proceeds to be applied by the trustee to the plaintiff's demand. Subsequently, on December 27, 1867, J. executed to the plaintiff a formal mortgage on the same improvements, with power of sale, to secure a different debt; which mortgage warranted the title to the property, "except a primitive lien upon the same, kept also by the mortgagee, to the amount of $650,"—this having reference to the instrument of November 5. This mortgage was duly recorded on the day of its execution.

Afterwards J. made a deed of trust on the same improvements, to secure a debt due the defendant ;—and the controverted question is whether this deed of trust takes precedence of the plaintiff's demand secured by the instrument of November 5. (The priority of the plaintiff's mortgage debt was conceded.) *Held*, on the authority of the Supreme Court of the United States in Hunt v. Rousmaniere, 1 Peters, 1, that, as the plaintiff never executed the power conferred on him by the instrument of November 5, he has acquired under it no interest which will be enforced by the courts to the exclusion or prejudice of the defendant's security.

APPEAL from Galveston. Tried below before the Hon. George E. Mann.

The opinion and head-notes state all facts of any importance.

*Robert G. Street*, for the appellant.—On the finding the court below gave judgment, enforcing plaintiff's prior lien on the improvements on lot No. 6 for his debt secured by the mortgage of December 27, but refused to enforce the lien claimed for the debt evidenced by the instrument of date November 5, holding that said debt was not secured by any lien. From this judgment, and the judgment enforcing the lien claimed by Murphy, Mervin appeals; and the sole question is, did Mervin have a lien to secure his first demand?

We claim this lien by virtue of the instrument of date November 5, 1867, and also by virtue of the second instrument, or mortgage, of date December 27, 1867.

The appellee, Murphy, contended below, and the court was understood to hold, that the first instrument gave no lien ; that it was really a naked power to appoint a trustee, and thereby create a lien, which power never having been exercised, the lien was never created; and that the court would not itself execute this unexercised power.

Waiving for a moment the question of the applica-

bility of the refinements of the law of uses and powers to this very inartificial attempt to secure a debt out of personal property, we contend :

1. That the doctrine of courts of equity, with respect to their inability to afford relief against the non-execution of powers, has no relation to the case. What is that doctrine? This: the court cannot compel the donor of a mere naked power to execute it when he has himself refused to do so ; nor is it ground for relief, in such case, that the execution of the power has been prevented by death. This is both obvious and familiar ; as if power be given one by a certain act to dispose of the property of another—whether to sell it, as under our ordinary powers of attorney, or to appoint it to uses, as is frequently done in family settlements in England, with relation to real estate, and in such case the donor refuses to execute it, or dies without making the appointment, then the court will not interfere—unless, indeed, the power be in the nature of a trust. " Powers are never imperative ; they leave the act to be done to the will of the party to whom they are given. Trusts are always imperative, and are obligatory upon the conscience of the party intrusted."

The doctrine of the non-execution of power has not, nor has it ever been thought to have, the most remote application to the case of a party who, still holding the power, merely seeks the aid of the court in its execution. (Sugden on Powers, Vol. I., 158, *et seq.;* Kent's Commentaries, Vol. IV., 339, *et seq.;* Story's Equity, Vol. I., § 169, *et seq.;* Holmes v. Coghill, 7 Ves., 506 ; Holmes v. Coghill, 12 Ves., 212.)

2. Is the power in question a " power coupled with an interest in the thing ? " Or is it of that species sometimes denominated " powers united with an interest merely in that which is to be produced by the exercise

of the power?" In other words, is it a lien, or a mere power to sell specific property as attorney in fact for the grantor, and to pay the debt out of the proceeds? Such was the character of the instrument sued on in the case of Hunt v. Rousmaniere, the exact. language of which may be found in 2 Mason's C. C. R., 244. This case was much relied on by the appellees in the court below, and we shall have occasion to refer to it again in support of those views sought to be maintained before this court by the appellant.

The points of difference between the case referred to and that at bar are vital. That was a formal power of attorney to sell property and pay a debt out of the proceeds ; this is an informal mortgage with power of sale; that was to be executed in the name of the grantor, and therefore could not be executed after his death ; this is to be executed by Mervin in his own name, the trustee is to sell in his own name, as trustee, and the contingency of death is provided for. Indeed, their only point of similarity is the absence in each of the usual words of conveyance, which, in Sampson v. McKeen, 6 Texas, 115, are said, in a mortgage, to be "deceptive and fictitious," and their abandonment is there recommended by Chief Justice Hemphill.

Whether or not such words are most appropriate to accomplish the giving of a mortgage under our system of laws, when a mortgage is a mere security for a debt, where there is no equity of redemption and the mortgagee never goes into possession, it is certain that neither in England nor in America have courts either of law or equity deemed any particular technical phraseology necessary to effectuate the intention of parties in any case. The court simply looks to the intention of the parties as expressed. What is the internal evidence to guide the court in its construction of the first paper?

The debt is declared to be "for the unpaid purchase money of the improvements" on which the security is given; in the event of the "death, failure or refusal of the maker to pay, power is given the appellant or other holder of the note to appoint a trustee, who shall have full power to sell the property, and, 'in his capacity as trustee,' to make good and sufficient title." And in the formal mortgage, executed one month subsequent between the same parties, and to secure a further debt on the same property, we find the following recital: "Hereby warranting the title to the same, except a primitive lien upon the same, also kept by the said C. W. Mervin, to the amount of six hundred and fifty dollars."

We have thus assembled, in one view, the salient points to which the court will look in the construction of the paper; each expression is consistent with and strengthens the other, and all consist with the intention of the parties to give a lien, and, we believe, consist with no other conceivable intention whatever.

It was contemplated that the security given should survive the death of the grantor, unimpaired in the remedy for its enforcement, i. e. by a sale of the property by the trustee. This expressed intention would be defeated by construing this instrument to be any character of security less valuable than a mortgage lien or "power coupled with an interest," for this character of security, and this alone, can survive the death of the grantor of the power.

We accept and rely on the exposition of the doctrine of powers contained in Hunt v. Rousmaniere; legal minds were never better constituted to wend safely the maze of abstractions in which that branch of the law has become involved, growing out of the complicated settlements of real estate in England, than were those

of Marshall, Washington and Story, assisted by such counsel as Webster, Hunter and Wheaton, all of whom successively applied their own powers to its elucidation.

Those eminent judges, in examining the question whether the power before them was one "coupled with an interest," looked exclusively to its character, whether or not surviving, for no other power does survive, unless it be executory. (Hunt v. Rousmaniere, 2 Mason, 244; Hunt v. Rousmaniere, 3 Mason, 294; Hunt v. Rousmaniere, 8 Wheat., 174; Hunt v. Rousmaniere, 1 Peters, S. C., 1; Bergen *et al.* v. Bennett, 1 Caines' Cases in Error, 6–20; Hurle v. Greenbank, 2 Atk., 714; Eyre v. Countess of Shaftsbury, 2 P. Williams, 120; Co. Litt, 52 *b.* and Butler's Notes, 2, 9, 8 to § 3; Co. Litt, 113 *a;* Powell on Powers, 8, 10 and 12.)

3. The recital in the second instrument is, of itself and apart from the first instrument, sufficient evidence of the lien. It is a solemn acknowledgment of its existence, which Martha Johnson is estopped from denying. (Greenleaf, § 23; Box v. Lawrence, 14 T., 545.) Whether we regard it as an original admission of the fact, or as explanatory of the first instrument, it is alike sufficient.

This second mortgage embodies a formal conveyance and a power of sale in Mervin. If deemed necessary, may it not well be held that this formal mortgage supplies all that might be held wanting in the first instrument—that the power becomes from that time coupled with an interest or estate, and that the power to appoint a trustee was substantially exercised by the appointment of himself as trustee in the second instrument? Or, might it not be said, that Mervin, holding the legal estate, the power was merged in that estate, and the estate was held in trust to secure his demands, and to

pay the excess of the proceeds to Martha Johnson ?  (1 Sugden, § 6, pp. 105, 163.)

The misdescription of the lot on which the improvements were situated gives rise to no question worthy of argument.    In fact, the rulings on that subject are not presented in any manner for revision.    There is no appeal from the judgment enforcing Mervin's lien under his formal mortgage.    Rejecting the false number of the lot, "sufficient description remains to ascertain the application."  (1 Greenleaf's Ev., 301 ; Berry v. Wright, 14 Texas, 273.)    The improvements consisted of a "one-story frame house," "finished by Mervin," purchased by defendant of Mervin, on block 209, in the city of Galveston.    The verdict of the jury identified these improvements, and charged Murphy with knowledge of the equities of Mervin.

We ask the court to render judgment enforcing Mervin's lien for both demands.

*Spencer & Stewart*, for the appellee Murphy.

WALKER, J.—There is no statement of facts accompanying the record in this case, and we should hold ourselves exonerated from its examination were it not that there is no disagreement between counsel as to the facts governing the case, and the question presented for our determination is purely one of law.

On the fifth day of November, 1867, Martha Johnson made and delivered to C. W. Mervin her promissory note for $650, due two months after date.    This note recites that it is given for a portion of the unpaid purchase money of improvements made on lot No. 1, block 209, in the city and county of Galveston, and the note is accompanied with the power to appoint a trustee to sell the property for the payment of the note.    The instrument has never been recorded.

On the twenty-seventh of December, 1867, Martha Johnson gave a formal mortgage over the same property, described in the same manner, to secure the payment of $671. This instrument was recorded on the day of its execution. It recites as follows:—"hereby warranting the title to the same, except a primitive lien upon the same, also kept by the said C. W. Mervin, to the amount of $650."

On the twenty-fourth day of February, 1868, Martha Johnson executed and delivered to one Quick a deed of trust for the improvements on lot No. 6, in block No. 209, in the city of Galveston, to secure a debt to Nicholas Murphy.

Mervin brought suit at the May term of the district court for 1868, against Martha Johnson, claiming that both his debts were secured upon the property, and praying for foreclosure. Murphy was made a party defendant, and by his pleadings claims that the deed of trust made to Quick for his use, though junior in point of time, nevertheless secures to him a prior lien upon the improvements therein described.

It appears that the improvements intended to be encumbered were upon lot No. 6, and not upon lot No. 1. This is one of the facts found by the jury; and they further find that in the first instrument, dated November 5, 1867, the misdescription of the lot was unintentional, but that in the mortgage of the twenty-seventh of December, both Johnson and Mervin knew what they were doing, and intentionally misdescribed the number of the lot; that no fraud was intended thereby, and that Murphy also knew these facts at the time the deed of trust was executed to Quick. If the improvements were accurately and perspicuously described, the misdescription of the *locus in quo* would not vitiate the mortgage as between parties and privies; nor could a

stranger take advantage of it if he had knowledge of the facts. The maxim of Lord Bacon, *falsa demonstratio non nocet*, here applies. The farm A., otherwise accurately described, though referred to as being in possession of B., in the deed, if actually in possession of C., is not so misdescribed as to render the deed void. The doctrine herein set forth is fully announced by this court in Berry v. Wright, 14 Texas, 273; and this would give Mervin a good lien under his mortgage of the twenty-seventh of December, 1867.

But the question remains to be determined, whether Mervin secured a lien by virtue of the note and power of November 5, 1867, which can claim priority over Murphy's deed of trust. This question is not free from difficulty, and in our judgment, were we to follow the authority of eminent text writers, we should incline strongly to the opinion that Mervin secured a valid lien under the power to appoint a trustee and sell. But there can be no doubt that this question is settled in advance by the highest judicial authority of the country, in the case of Hunt v. Rousmaniere, 1 Peters, 1; 8 Wheaton, 201; and 2 Mason, C. C., 342. The doctrine herein laid down makes a clear distinction between a power coupled with an interest in the thing, and a power coupled with an interest in the proceeds of the thing when sold.

Had Mervin appointed a trustee and sold the property, his right to the proceeds could not have been questioned; but in our judgment equity will not now enforce the execution of the power to the prejudice or exclusion of intervening equities.

We think his honor the district judge, upon the second trial, ruled the law of this somewhat difficult case correctly; and for the reasons we have given, we affirm the judgment of the district court, giving Mervin

a prior security on the property, for the debt secured by his mortgage, and postponing the payment of his first claim to the prior equities of Murphy, secured by the trust deed.

AFFIRMED.