## BATTLE v. WOLFE et al. (No. 2655.)

(Court of Civil Appeals of Texas. Amarillo. April 14, 1926. Rehearing Denied May 19, 1926.)

**I. Evidence ⬦⬦451—Extrinsic evidence held admissible, though description in deed contained patent ambiguities, where issue was identity of subject-matter of conveyance.**

Though description in trust deed contained patent ambiguities, extrinsic evidence was admissible, where issue was the identity of the subject-matter of the conveyance.

**2. Deeds ⬦⬦111—Court, in ascertaining location of beginning corner of land intended to be conveyed, must look to entire description contained in instrument.**

Where description of land in controversy contained ambiguities, court, in ascertaining location of beginning corner of such land, must look to entire description contained in the instruments.

**3. Deeds ⬦⬦38(1)—Description of land in deed is sufficient, where there is data from which description may be made certain.**

Description of land in deed is sufficient, if there is data from which the description may be made certain, especially where party dealing with or interested in land knew its location within larger tract of which it is a part.

**4. Deeds ⬦⬦38(1)—Deed is not void, though description of land is ambiguous, where land intended to be conveyed can be identified by aid of extrinsic evidence.**

Though description of land is uncertain and ambiguous, if land intended to be conveyed can be identified by aid of extrinsic testimony, deed is not void, especially where possession by several parties of a definite tract is shown.

**5. Appeal and error ⬦⬦1050(1)—Trespass to try title ⬦⬦56—Admission in action of trespass to try title, of evidence of expenditures by defendant for improvements held error but harmless, where issue was not submitted to jury nor facts taken into account in entering judgment.**

In action of trespass to try title, admission of defendant's testimony of amount expended by him for labor and material on land in controversy was error, but harmless, where issue was not submitted to jury nor facts taken into account in entering judgment.

**6. Evidence ⬦⬦397(1)—Parol evidence, contradicting terms of written contract, held properly excluded, where fraud, accident, or mistake in execution of such contract was not pleaded.**

In action of trespass to try title, parol evidence offered by plaintiff, contradicting terms of written contract between defendant and another, held properly excluded, where plaintiff did not plead either fraud, accident, or mistake in execution of such written contract.

**7. Witnesses ⬦⬦389 — Affidavit denied being made by witness held inadmissible to impeach him, where no proof was offered tending to show that witness had in fact made it.**

Where witness denied making a certain affidavit, such affidavit was not admissible for purpose of impeaching such witness, where it was offered without any proof tending to show that witness had in fact made it.

**8. Trespass to try title ⬦⬦11—Plaintiff, in trespass to try title, cannot assert that conveyance to execution debtor through whom defendant acquired title was void and assert valid title by sale and purchase at execution sale.**

Plaintiff, in trespass to try title, cannot assert that conveyance to execution debtor, through whom defendant acquired title, was void because of defect in description contained in conveyance, and at same time assert a valid title by sale and purchase under execution from defendant in execution, who had no title.

**9. Trespass to try title ⬦⬦6(1).**

Plaintiff, in trespass to try title, must recover on strength of his own title.

**10. Trespass to try title ⬦⬦6(1)—Plaintiff, in trespass to try title, who as execution creditor did not fix judgment lien nor purchase land under execution until after defendant foreclosed deed of trust and acquired title and possession under trustee's sale, held not to have shown title.**

Plaintiff, in trespass to try title, claiming by purchase as execution creditor at execution sale, held not to have shown title, where he made no effort to fix judgment lien, and did not purchase land under execution until after defendant had foreclosed deed of trust and acquired title and possession under trustee's sale.

**II. Deeds ⬦⬦42—Unintentional misdescription resulting from mutual mistake does not invalidate instrument as between parties or as to subsequent purchaser with notice.**

Unintentional misdescription of property, which is result of mutual mistake, does not invalidate instrument as between parties or as to subsequent incumbrancer or purchaser with notice of mistaken description.

**12. Mortgages ⬦⬦142.**

As between mortgagor and mortgagee, former cannot take advantage of defective description of property contained in trust deed.

**13. Judgment ⬦⬦198—Issue submitted to jury which, because of limitations placed on it by trial court, was reduced to question of law, and was immaterial under pleadings and evidence, held properly disregarded by trial court in rendering judgment (Rev. St. 1925, arts. 2202, 2209).**

Where issue submitted to jury, because of limitations placed on it by trial court, was reduced to question of law for court, and was immaterial in light of pleadings and evidence, held that under Rev. St. 1925, arts. 2202, 2209, court properly disregarded it in rendering judgment.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

⬦⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
283 S.W.—68

Action of trespass to try title by F. S. Battle against A. T. Wolfe and another. Judgment for defendants, and plaintiff appeals. Affirmed.

H. O. Williams and Luther Hoffman, both of Wichita Falls, for appellant.

W. J. Townsend, Fitzgerald & Hatchitt, and W. W. Cook, all of Wichita Falls, and C. F. Spencer, of Dallas, for appellees.

HALL, C. J. This is an action of trespass to try title and for damages, brought by Battle against Wolfe and C. F. Spencer, and involves the title to a certain oil and gas leasehold estate in land situated in Wichita county, a part of the Louisa Netherly survey, abstract No. 240, and being described by metes and bounds, as follows: Beginning at a point in the east boundary line of said Louisa Netherly survey, 1,521 varas north of southeast corner of tract No. 3, of said survey; thence west 990 varas to a point in west line of said tract 3; thence north 460 varas; thence east 495 varas; thence north 798 varas; thence east 495 varas to a point in the east line of said survey; thence south 1,258 varas to the place of beginning.

The appellee Wolfe answered by general denial, plea of not guilty, and specially set out his title, alleging, in substance: That he and those under whom he claims, had had adverse possession of the premises in good faith for more than one year next before the commencement of the suit. That on or about the 23d day of October, 1923, C. F. Spencer was in possession of the premises, claiming the same under a regular chain of title from L. N. Lochridge and wife, the owners in fee simple, as well as from Louisa Netherly, to whom said land was patented by the state of Texas. That the leasehold estate was sold under a deed of trust executed and delivered by the American Consolidated Petroleum Corporation to J. E. Strong, as trustee, and by trustee's deed dated October 2, 1923, the said Spencer became the purchaser at said sale, and received a trustee's deed. That on October 24, 1923, Spencer, by an assignment in writing, duly executed and delivered, transferred the premises to the defendant Wolfe, for a valuable consideration paid to the grantor. He alleges that since he purchased the leasehold estate he has made improvements in good faith to the value of $7,842.86; that when he went into possession there were 8 or 10 wells on the premises which were then producing less than one barrel of oil per day, which wells he repaired, causing them to produce oil in paying quantities.

The defendant Spencer answered by general denial and plea of not guilty, and specially alleged: That on the 2d day of January, 1923, the American Consolidated Petroleum Corporation executed its deed of trust to J. E. Strong, as trustee, to secure its indebtedness to Spencer in the sum of $42,000, conveying the leasehold estate in controversy, together with all equipment and improvements thereon. That a sale was made under said deed of trust, regular and legal in all respects, and that he became the purchaser at such sale. That the description of the property as contained in the deed of trust and trustee's deed contained omissions and mistakes, as follows: (a) Wherein the call to begin 1,521 varas from the southeast corner of tract No. 3 in the Netherly survey, was intended by the parties to be 1,521 varas north from the southeast corner of tract No. 3 of said survey. (b) Wherein the line running west 990 varas from the beginning calls for the west line of said survey, it was intended by the parties to run to and end in the line of tract No. 3. (c) Wherein the owner of said tract No. 3 was named as D. N. Lochridge in said deed of trust, L. N. Lochridge was intended to be named as such owner. (d) Wherein the fifth line in said tract was omitted, it was the intention of the parties that such call should be: "Thence east 495 varas." That said omissions and errors in the description of the premises resulted from the mutual mistake of the parties to said instrument. That L. N. Lochridge now and then owned tract No. 3 of said Netherly survey, and no other land therein, and that said lease was executed by him and his wife, and that no one by the name of D. N. Lochridge owned any land in said Netherly survey at that time. That he sold the same to the defendant Wolfe prior to the time plaintiff purchased said property, and executed to Wolfe a deed conveying the same to him.

The plaintiff, Battle, claimed title through a judgment lien based upon the record of abstract of judgment in cause No. 14,822, entitled F. A. Battle v. American Consolidated Petroleum Corporation, which lien was recorded November 2, 1923, after the property had been purchased by Spencer at the trustee's sale on October 2, 1923, and further in virtue of an execution sale and sheriff's deed under his said judgment.

The case was submitted to a jury upon two special issues, both of which were answered in the negative, the issues being as follows:

"No. 1. Find whether or not the land described in the deed of trust from American Consolidated Petroleum Corporation to C. F. Spencer could be located on the ground by a competent surveyor from the data contained in or referred to in the instrument."

"No. 2. Did C. F. Spencer agree that 75,000 shares of the stock of the American Consolidated Petroleum Corporation should be issued to him in satisfaction of his claim against said company?"

There was a judgment for the defendants, from which this appeal is prosecuted.

Following is a map of the southern part of

the Louisa Netherly survey, showing the three tracts into which the survey was divided when the lease in question was first assigned by the owner. The tract inclosed by the heavy lines is the 130 acres of land in controversy:

By his first five propositions, the appellant, Battle, attacks the action of the court in admitting in evidence the deed of trust executed by the American Consolidated Petroleum Corporation to Spencer; the notice of the trustee's sale under said deed of trust; the trustee's deed to Spencer made in pursuance of the sale; and the assignment by Spencer to Wolfe of the premises in controversy, upon the ground that the description of the property in said instruments is insufficient, rendering the instruments void, that such descriptions presented patent ambiguities, and that parol evidence was inadmissible to explain or aid the description or identify the property attempted to be described therein.

On the 8th day of November, 1921, Spencer, who then owned the leasehold estate amounting to 130 acres out of tract 3 of the Louisa Netherly survey, assigned the property to the American Consolidated Petroleum Corporation, in which the property is described as follows:

"Being situated in Wichita county, Tex., and beginning 1,521 varas from the southeast corner of tract No. 3, Louis Netherly Survey (now owned by L. N. Lockridge); thence west 990 varas to a point in the west line of said survey; thence north 450 varas; thence east 495 varas; thence north 798 varas, thence 1,258 varas to a point of beginning, containing 130 acres."

The deed of trust thereafter executed by said corporation to J. E. Strong, trustee, to secure its indebtedness to Spencer in the sum of $42,000, described said property as follows:

"First Tract: Being situated in Wichita county, Tex., and beginning 1,521 varas from the southeast corner of tract No. 3, Louis Netherly survey (now owned by D. N. Lockridge); thence west 990 varas to a point in the west line of said survey; thence north 450 varas; thence east 495 varas; thence north 798 varas; thence south 1,258 varas to a point of beginning, containing 130 acres."

The property is described in the trustee's notice of sale as follows:

"First Tract: Situated in Wichita county, Tex., and described to begin 1,521 varas from the southeast corner of tract No. 3 Louis Netherly survey (now owned by D. N. Lockridge); thence west 990 varas to a point in the west line of said survey; thence north 450 varas; thence east 495 varas; thence north 798 varas; thence east 495 varas; thence south 1,258 varas to the place of beginning, containing 130 acres."

In the trustee's deed to Spencer, dated the 2d day of October, 1923, the property is described as follows:

"First tract: Being 130 acres, described to begin 1,521 varas from the southeast corner of tract No. 3 Louis Netherly survey (now owned by L. N. Lockridge); thence west 990 varas to a point in the west line of said survey; thence north 450 varas; thence east 495 varas; thence north 798 varas; thence east 495 varas; thence south 1,258 varas, to the place of beginning."

When, on the 26th day of October, 1923, Spencer sold and conveyed the property to his coappellee, Wolfe, the property was described in said conveyance, as follows:

"Being 130 acres, described to begin 1,521 varas from the southeast corner of tract No. 3, Louis Netherly survey (now owned by L. N. Lockridge); thence west 990 varas to a point in the west line of said survey; thence north 450 varas; thence east 495 varas; thence north 798 varas; thence east 495 varas; thence south 1,258 varas to the place of beginning."

It is clear that the parties intended to convey 130-acre leasehold out of tract No. 3 of the Netherly survey in Wichita county, and which tract was then owned by Lockridge; that there were oil wells and equipment already on the land.

[1] The description in the field notes, contained in the several instruments and copied above, is attacked, first, for the reason that the initial call is insufficient and uncertain, in that the course from the southeast corner of the Netherly survey is not given and therefore a patent ambiguity is presented which cannot be aided or explained by parol evidence. In its strictest sense, the rule announced by Lord Bacon regarding patent ambiguities is no longer adhered to by the modern decisions, and more than once, it has been expressly repudiated in Texas, where the is-

sue was the identity of the subject-matter of the conveyance.

As said in Myers v. Maverick (Tex. Civ. App.) 28 S. W. 716 (on second motion for rehearing):

"Taking up the second objection first, we are still of the opinion that the ambiguity was a latent one, as we have heretofore held; but, let it be latent or patent, testimony was admissible to explain it. Under the more enlightened modern view, there is no real difference in the rules applicable to patent and latent ambiguities, and there is no reason why the terms should be perpetuated in legal language. Wig. Ev., 80, 203; 1 Jarm. Wills, p. 745. In the May and June (1894) number of the American Law Review is found an excellent article by Prof. Charles A. Graves of Washington and Lee University, read before the Virginia State Bar Association, which embodies the reasonable modern idea in connection with extrinsic evidence as applied to written instruments. In this article the rule is clearly enunciated that there is no distinction permitted between latent and patent ambiguities, in the admission of extrinsic evidence to explain the ambiguity."

In the same case (27 S. W. 951, 952), Judge Fly said:

"It is, however, almost universally conceded that the best rule to be adopted is 'that if there appear enough in the description to enable a party familiar with the locality to identify the premises intended to be described with reasonable certainty, to the exclusion of others, it will be sufficient.' It is enough that the description points out and indicates the premises so that, by applying it to the land, it can be found and identified. * * * The rule in regard to descriptions of land in deeds, * * * is that 'the land must be described by the terms of the deed, or it must give data from which the description may be found and made certain. Coker v. Roberts, 71 Tex. 597, 9 S. W. 665. In the case of Norris v. Hunt, 51 Tex. 609, * * * the lack of description was patent on the face of the instrument; the description being the interest of Norris in 640 acres of land out of a certain league, and the deed being one made by a sheriff at an execution sale. It is intimated in the Norris-Hunt Case, as well as in a number of authorities, that there is greater reason for a more definite and certain description of land sold by an officer than in transactions between private parties. We are of the opinion that the description of the land would hold good under the old legal maxim, 'That is sufficiently certain which can be made certain.' Harkey v. Cain, 69 Tex. 146, 6 S. W. 637."

Again, in the same case (27 S. W. 1083) it is said:

"In passing upon a sheriff's deed, the Supreme Court, in Camley v. Stanfield, 10 Tex. 547 [60 Am. Dec. 219], said: 'The identity of the land intended to be conveyed by the deed was a question of evidence, to be passed upon by the jury, and, if it was described with sufficient certainty as to be rendered certain by other testimony, it ought to have been permitted to go to the jury.' The description in the contract did not render it void, but it was suffi-

cient to open up the question of its location through extraneous evidence."

[2] In an effort to ascertain the location of the beginning corner of the 130 acres intended to be conveyed, the court must look to the entire description contained in the instruments. Holman v. Houston Oil Co. (Tex. Civ. App.) 152 S. W. 885. The doctrine announced in this case has been frequently quoted with approval by the courts of this state.

"A deed is not void for uncertainty because there may be errors or an inconsistency in some of the particulars. If a surveyor, by applying the rules of surveying, can locate the land, the description is sufficient, and generally the rule may be stated to be that the deed will be sustained, if it is possible from the old description to ascertain and identify the land intended to be conveyed." 2 Devlin on Real Estate (3d Ed.) § 1012.

"What is usually termed a patent ambiguity is such as exists or appears on the face of the writing itself. That portion of Lord Bacon's rule, in which he states that an ambiguity of this character cannot be explained by parol, has frequently been repeated by the courts as a correct exposition of the law. On the other hand, however, this statement has been subjected to much criticism, on the ground that it is too general, too broad, and not of universal application, at least where the word 'ambiguity' is taken in its broad sense of doubtfulness, uncertainty, or double meaning. It is certainly not true that an ambiguity appearing on the face of the paper, if that alone is looked to, cannot be explained by parol; and the rule laid down by Lord Bacon that extrinsic evidence is not admissible to explain a patent ambiguity has never been acted upon in its widest extent, for there are to be found in the reports many cases where, although the ambiguity was such as should undoubtedly be designated as patent, if that term is taken in its broad sense, the courts have admitted evidence to explain it, or to show the circumstances surrounding the transaction and the situation of the parties. In addition to this, there are many cases flatly repudiating this part of the rule for expressly holding that a patent, as well as a latent, ambiguity may be explained by extrinsic evidence." 22 C. J. 1196 et seq.

"The true rule with regard to patent ambiguities must be taken to be this: The patent ambiguity which cannot be explained by parol evidence is that which remains uncertain, if the court has received evidence of the surrounding circumstances and collateral facts which are of such a nature as to throw light upon the intention of the parties. In other words, and more generally speaking, if the court, after placing itself in the situation in which the parties stood at the time of executing the instrument, and with full understanding of the force and import of the words, cannot definitely ascertain the meaning and intention of the parties from the language of the instrument thus illustrated, it is a case of incurable and hopeless uncertainty, and the instrument, so far inoperative and void, and it cannot be sustained or rendered operative by the introduction of evidence which would necessarily have the effect of adding new terms to the writing." Id. 1199.

"Parol evidence is always admissible where it

is necessary in order to identify, explain, or define the subject-matter of a grant, mortgage, contract, or other writing, for without such evidence, it would be impossible to give effect to the intentions of the parties. This is true, even though the contract or transaction as to which the evidence is sought to be introduced is of such a nature that by the statute of frauds it is required to be in writing, for the evidence does not supply an ·omission and thus make a contract which the law requires to be in writing rest in parol, but merely intends to explain an ambiguity which is permissible. The admissibility of evidence under this rule has been held to be not dependent upon any distinction between latent and patent ambiguities, although, if the instrument is not ambiguous as to the subject-matter, but clearly designates it, parol ‚ evidence is not admissible, for in such case its only effect would be to vary the writing." Id. 1261 et seq.

"Where the subject-matter of the writing is imperfectly described therein, or the description is in some respects inaccurate, ambiguous, or very general in character, it is always competent to aid the description and identify the subject-matter to which it is intended to apply, and to apply the description to such subject-matter by extrinsic evidence not consistent with those written." Id. 1266, 1267.

"Parol evidence is admissible to supply the instrument or a description therein to its sub- ‑ject-matter, and to enable the court to execute it, and this principle admits extrinsic evidence beyond the mere designation of the thing on which the contract operates, and evidence, so far as to embrace the circumstances which accompany the transaction, when without the aid of those circumstances the written contract could not be applied to its proper subject-matter." Id. 1271, 1272.

"The first requisite of an adequate description is that the land shall be identified with reasonable certainty but the degree of certainty required is always qualified by the application of the rule that 'that is certain which can be made certain.' A ·deed will not be void for uncertainty, if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property it was intended to convey. The law will not declare the instrument void for uncertainty until it has been examined with all the light which contemporaneous facts will furnish. If these render the intention clear, and the words of the instrument are by fair rendering, susceptible of a construction, to uphold such intention, then they will be so construed, and the instrument enforced. It is only when it remains a matter of conjecture, what property was intended to be conveyed, after resorting to such extrinsic evidence as is admissible, that the deed will be held void for uncertainty in the description of parcels." 4 Thompson on Real Property, § 1073.

"The office of a description is not to identify the land, but to furnish a means of identification; hence a description which furnishes a means of identifying the land is sufficient. It is not essential that the deed contains such description as will enable the identification to be made without the aid of extrinsic facts. The description will be liberally construed to afford the basis of a valid grant. If the description is sufficient to allow of identification by an actual survey, it will be upheld, however indefinite it may seem to be." Id. § 3074.

"A manifest omission in a description may be supplied by construction when the deed furnishes sufficient data for this purpose. In like manner, a manifest error, such as an error in the number of lot or block of land, may be corrected by the data supplied by the deed. The omission of one boundary line or of a call in a survey does not necessarily render the description void, for the remaining line may be determined by the lines given, and, if made by the description, may be aided by extrinsic evidence." Id. 3081.

The same author in section 3085 says, that a defective description, which does not of itself identify the land, may be cured by the action of the parties, as when the grantee enters into possession of the quantity of land named in the conveyance as being out of a larger tract.

[3, 4] If there is data from which the description may be made certain, it is sufficient. Porch v. Rooney (Tex. Civ. App.) 275 S. W. 494. And this is especially true where the party dealing with or interested in the land knew its location within the larger tract of which it is a part. Caddell v. Lufkin Land & Lumber Co. (Tex. Com. App.) 255 S. W. 397. Although the description is uncertain and ambiguous, if the land intended to be conveyed can be identified by the aid of extrinsic testimony, the deed is not void, especially where the possession by the several parties of a definite tract is shown. Folmar v. Thomas (Tex. Civ. App.) 196 S. W. 861.

In the case of Hinkle v. Hays (Tex. Civ. App.) 162 S. W. 435, the contention was that the following description was void for uncertainty:

"315 acres of land situated about 12 miles north of Mt. Pleasant, in Titus county, on White Oak creek, beginning at Driskill surveys; thence east with the same at 1,284 varas, a stake, from which being Driskill's southwest corner; thence with same 1,280 varas; thence west 1,378 varas, a stake; thence south 1,284 varas to the place of beginning, so as to contain 315 acres, either more or less."

This contention prevailed in the trial court, but was overruled by the Court of Civil Appeals, saying:

"Determining from all the calls, as we do, that there is an obvious error in one of the calls in the deed, and that such error is that the starting point, made indefinite by the call, it would follow that the other calls, being readily ascertained and agreeing, would be entitled to as much consideration as the first. * * * It is not believed that a deed should be held void that has some definite and fixed corner and calls that, if followed from the fixed call, would completely describe a tract of land intended to be conveyed."

The same court in Cleveland v. Shaw, 119 S. W. 883, in passing upon the defective description, said:

"It could not be assumed as a fact by the court that the marked tree called for in the deed is not on the ground and could not be found, and that the division lines of the two Burkhams could not be located and established. * * * The rule is well settled that, where the deed on its face describes the land conveyed with reasonable certainty to enable the vendee to identify it by the aid of extrinsic evidence, it is valid and admissible in evidence."

In the case of Fortenberry v. Cruse (Tex. Civ. App.) 199 S. W. 523, the deed was attacked upon the ground that there was a patent ambiguity in the description, and the court said:

"The appellant's first assignment of error is to the effect that the court erred in admitting in evidence the deed from J. T. and C. M. Fortenberry to Chapman and Johnson, for the reason that said deed is void, in that it does not describe any land, and the ambiguity is a patent one."

The description complained of is as follows:

"Lying and being situated in Tyler county, said state, on the waters of Billums creek: Beginning at the southwest corner of the William Pool land; thence east 1,220 varas to the Lewis league; thence south 1,050 varas to the beginning, containing 226 acres, more or less."

It was said that this description presented no patent ambiguity, and that extrinsic evidence was admissible to cure the defect, and further said:

"An inspection of the deed shows an obvious omission of two calls which may be supplied with reasonable certainty"—citing the case of Mansel v. Castles, 93 Tex. 414, 55 S. W. 559, and continuing, as follows: "Generally, the cases in which it has been held by the courts that the description of land is insufficient are those in which the land, as given, is an unidentified number of acres out of a larger tract."

It appears to us that, viewing the field notes in that deed, it is just as reasonable that the 226 acres were to be laid off north of the first call as south of it. It appears just as reasonable to say that the second and third calls were left out, and that the call for the south 1,050 varas to the place of beginning was from the corner made by the third line, as to say that the third and fourth calls were omitted. At any rate, it is clear that the ambiguity in the instrument considered in the Fortenberry Case is more confusing than in the case at bar, and the parol testimony necessary to explain it in that case was more extensive than is required in the instant case. The Mansel Case, supra, was decided by Judge Gaines. The deed considered there showed that one call was left out, and the last line calling for the beginning doubled back on the second. In disposing of the contention, the court said:

"It is apparent at a glance that there is a mistake in the field notes. There are but three lines called for, and the third line, while it calls to run to the beginning, simply runs back on the second. It thus becomes obvious that one or more calls have been inadvertently omitted. Running, then, the first two calls, we get two lines at right angles to each other. Recurring then to the beginning point and establishing the last line by reversing the call for its course and by running the distance called for, we get another line at right angles to the first and approximately of the same length as the second. By supplying another line running from the end of the second to the north end of that so established, we complete a parallelogram which contains a fraction of an acre over 87¾ acres—the number called for in the description. It is true that the requisite number of acres may be obtained by running three or more lines between the end of the second line and the beginning of the last; but, if such had been the case, it is highly improbable that they would all have been omitted; while the omission by mistake of the calls for one line in a set of field notes is a matter of not infrequent occurrence. While, therefore, the proposition that the calls of the description in question correct themselves and show the land intended to be described, it is not capable of mathematical demonstration; yet that it is true is reasonably certain. Upon such certainty we act in all the highest concerns of life, and it is sufficient for the purposes of the law."

In the case of Miller et ux. v. Hodges (Tex. Com. App.) 260 S. W. 168, Judge German said:

"The sole purpose of a description of land, as contained in a deed of conveyance, being to identify the subject-matter of the grant, a deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey."

And it is further said:

"It is also a well-established principle that, if the words used in the description of a deed are uncertain, resort may be had to the construction given them by the parties themselves; and, where they have given same a practical construction and made them applicable to certain property, this will be a strong circumstance in ascertaining their intention."

In the case of Carpenter et al. v. Smith (Tex. Com. App.) 272 S. W. 128, where the description was more indefinite than in the instant case, the court declared it to be sufficient, saying:

"This instrument purports to transfer all oil, gas, and mineral rights in and under a certain body of land containing about 1,300 acres, describing its location. Therefore it is not subject to objection that proof of a parol agreement is necessary to show the subject-matter of the transaction and effect a transfer and void as being contrary to the statute of frauds."

To the same effect is the holding in Strother v. Hamilton (Tex. Civ. App.) 268 S. W. 529; William Carlisle & Co. v. King et al., 103 Tex. 620, 133 S. W. 241.

The testimony in the record to which the

above-announced principles are applicable, and which support the action of the court in admitting parol testimony to identify the subject-matter of the contract, we briefly state as follows:

There are 7 or 8 wells on the 130-acre lease in question, together with all necessary equipment for pumping oil at the time the American Consolidated Petroleum Corporation purchased it from Spencer. In addition to derricks, casing, engine, and other appurtenances, there was a rod-pulling machine, a team of horses, a bunk house, and a power house. G. C. Battle, the brother of appellant, F. S. Battle, was a stockholder in the American Consolidated Petroleum Corporation, and at one time served as president of the corporation.

J. C. Wharton, who was president of the corporation while it owned the lease in controversy, testified that he met F. S. Battle, a few times; that Battle was in Wichita Falls and visited the lease.

L. N. Lochridge testified that he had lived in Wichita county 17 years, and was the Lochridge who owned block 3 of the Louisa Netherly survey since February 5, 1907; that he drilled practically all of the wells on the lease, and others, 17 in all, and that when he disposed of it the lease had a pump house, engine, and other necessary equipment, and the wells all had casing in them, pump jacks, and the equipment necessary for pumping oil. He testified further that tract No. 3 was the east portion of the Louisa Netherly survey; that there was no such man as D. N. Lochridge who owned any part of tract 3; that he assigned the lease in question to Scarborough & Platt, shown on the plat by the heavy lines; that, after Scarborough & Platt disposed of it, Judge Spencer was in charge for about two years before he conveyed it to the American Consolidated Petroleum Corporation; and that said corporation operated the lease about a year and a half. He testified that he owned no other land in the Netherly survey except tract No. 3; that there were no wells on the west side of the Netherly survey.

Appellee Spencer testified that he purchased the 130-acre lease·in question from Scarborough & Platt for the sum of $29,500, including the improvements; that he did not drill any additional wells, but put in a new power plant, and that there were 9 producing wells on the lease at the time he purchased it; that he sold it to the American Consolidated Petroleum Corporation at the end of about a year and 4 months; that he did not own any other portion of block 3 of the Louisa Netherly survey than the 130 acres described in plaintiff's petition, shown by the heavy lines on the plat, and which was intended to be included and described in the conveyance; that, as soon as he purchased the lease, he went into possession of the whole 130 acres, being the identical property

which he sold and delivered into the possession of the American Consolidated Petroleum Corporation; that said corporation operated it from about November, 1921, to about March, 1923; that it was the identical property which was intended to be described in the deed of trust which the corporation gave to Strong, as trustee.

He further testified that F. S. Battle, the appellant here, was in Wichita Falls during the time he had possession of the lease, and talked with him about the lease and about the indebtedness of the corporation, and the deed of trust given to secure it; that Battle knew that the corporation owed him $42,000, and that there was a deed of trust on the property to secure it; that he had talked the matter over with Battle in Dallas, and as many as four different times in Wichita Falls; that Battle knew what property was included in the deed of trust, and that he went out and onto the property; that Battle said to him, "I have been out on the Lochridge lease to-day," referring to the 130-acre lease in question; that Battle also knew the corporation had not paid him for the lease.

John A. Donald testified that he was a surveyor and civil engineer, and had been for about 39 years, that he had been doing a great deal of surveying in Wichita county for about 8 years, and that he took the assignment of the lease which Spencer executed to Wolfe and took the field notes, and, as a surveyor, located the 130 acres of land on the ground. He stated: That he went to the records of the county and got the patent containing the field notes of the Louisa Netherly survey, and the patent describing tracts Nos. 2 and 3, showed that the width of tract No. 3 was 990 varas east and west. That the beginning point in the field notes was the southeast corner of tract No. 3, which point was identical with the southeast corner of the Netherly survey. That the first call, 1,521 varas to the beginning corner for the 130 acres, gave no course, except in the assignment from Spencer to Wolfe, but that the second call in the field notes for each is "thence west 990 varas," and end in the west line of tract No. 3. If the call for 1,521 varas from the southeast corner of tract No. 3 is run north from that point, it would make the second call work out as set out in the field notes. While the field notes call for the west line of the survey, it is clear that the west line of tract No. 3 is intended, because if you run west 1,521 varas from the southwest corner of tract 3, and then 990 varas on west, you would still be 220 varas short of getting to the west line of the Netherly survey. That, if you should run any other direction except north on the first call, you would fall still farther short of reaching the west line of the Netherly survey. That he ascertained from the records that tract No. 3 is the only survey in that vicinity that has an east and west line of 990 varas.

That he located the southwest corner of the Netherly survey from the field notes of the patent, and the calls for the Ramsey, Benton, and other adjoining surveys. That he first located the Netherly survey, and then located tract No. 3 of the Netherly survey. That if you run 1,521 varas in any other direction than north, and from that point run 990 varas west, you would not reach the west line of any survey, but 1,521 varas from the beginning point west would end at a point entirely off of tract No. 3, and on land not owned by Lochridge, and would indicate to a competent surveyor that in running the 990 varas he had started from the wrong place. That there are no lines of any surveys in that territory which run other than north and south or east and west. That, in running the other calls from the point in the west line 450 varas north, 495 varas east, 798 varas north, thence south 1258 varas, shows that some call has been omitted. As a practical surveyor, he knew that the 1,258 varas would retrace the last call 798 varas, and clearly showed that there was an omitted call, but by inserting a call east for 495 varas, which would end on the east line of tract No. 3, thence running south 1,258 varas, would end exactly on the east line of tract No. 3, 1,521 varas north of its southeast corner, and 990 varas east of its west line. That, when he found that there was a missing call, he went back to the beginning and reversed his calls, running north 1,258 varas, and then 495 varas west closed the survey. If you should run due west from the southeast corner of tract 3,990 varas, you would hit the southwest corner of that tract, and the field notes would probably have called for the southwest corner, and, if the line had been extended 1,521 varas, they would have called, not only for the southwest corner of tract 3, but for some point on the south line of tract 2, or of the Netherly survey. He testified: That he ran out all the lines of the other tracts and surrounding lands and platted them. That they asked him to locate the land from the description contained in the deed of trust. That in supplying the omitted line he followed the rule that would close the survey without reference to the number of acres. That after he found out on actual computation that, after supplying the call, he had inclosed, instead of 130 acres, 100 acres, if there was nothing to indicate anything else, he would feel that he would be warranted in supplying that call. That, if he should find that he had inclosed 180 acres, he would go outside of the description in the field notes, and, if by running in a southeast direction 1,258 varas, instead of south to the beginning corner, he could include 130 acres, he would run on that variance. That, if he should run angling across the tract he would know that he was running in a direction, and for a distance not called for. That the two north calls on the west side, when added together, equal the 1,258 varas shown to be the last call for reaching the beginning point, and therefore that distance should be run south. That as a practical surveyor, when he finds a call with such ambiguity as the first call in the field notes, then he looks for other things in there to try to make it certain. That he saw the wells and the power house, and the pump house and equipment about a mile and a half from the initial corner. That he found oil wells on the south line and some on the north. That he found all the lines in that vicinity running due east and west, or due north and south, and that, since the call for 1,521 varas, if run any other course than due north, would put part of the land over on Ferguson's tract, he naturally concluded that the course must be north, and that by running north, and 990 varas due west, at right angles to the east line of tract No. 3, which is identical with the east line of the Netherly survey, he located the land with reasonable certainty.

J. C. Penson testified that he was an oil well pumper, and had worked on the lease in question for 7 years; that he had met the plaintiff, F. S. Battle, on the lease, and that Battle had discussed the lease with him prior to the time the suit was filed; that Battle asked him where the boundaries of the lease were, what directions the boundary lines ran, and how the lease was located; and that he gave him all the information requested.

[5] The appellant complains of the admission in evidence, over his objection, of the testimony of appellee Wolfe, showing that he had expended nearly $8,000 for labor and material on the lease after he acquired it. This testimony was inadmissible. He was not entitled to recover for improvements in good faith; but the issue was not submitted to the jury, nor were the facts taken into account in entering judgment, and the testimony could not have influenced the jury in their findings upon either of the issues submitted. The error is therefore harmless.

[6] The next contention is that the court erred in excluding the testimony of W. C. Martin, one of the officers of the American Consolidated Petroleum Corporation, with reference to a verbal agreement with Spencer to the effect that the latter agreed to take 75,000 shares of stock in the company in satisfaction of his claims against it, and that after said stock had been issued to Spencer, he attended a stockholders' meeting where there was no discussion with reference to the stock. The witness then testified that Spencer had taken stock for his indebtedness against the corporation, amounting to $42,000. The appellees objected, upon the ground that there was a written contract between Spencer and the corporation which embodied the terms of the agreement with reference to the issue of the stock, and that it was the best evidence. The court sustained the objection, saying that

the written contract bound the parties, and was the best evidence of their understanding; to all of which appellant duly excepted.

The written contract referred to clearly sets out the terms of the agreement upon which the stock was issued, and precludes the idea that Spencer was to accept it in satisfaction of his indebtedness. It appears that the stock was to be issued, and was then to be sold by the corporation or its agents, and the proceeds from the sale to be applied to the satisfaction of Spencer's indebtedness.

The appellant did not plead either fraud, accident, or mistake in the execution of the written contract, and parol evidence from the witness Martin to contradict its terms was inadmissible. In this connection the inquiry arises, Why should the corporation execute a deed of trust to secure its indebtedness for $42,000, if at the same time Spencer had accepted stock in the corporation to the extent of 75,000 shares in full satisfaction of his note? The appellant's contention is that the agreement with reference to the stock was verbal, and was made at the time of the signing of the deed of trust.

The written contract between the corporation and Spencer binds the corporation to deposit the stock within a period of 60 days for the account and credit of the said Spencer as the same is disposed of, the stock to be deposited in the City National Bank of Wichita Falls; that when it had been disposed of to the extent of $42,000, and Spencer credited in the bank with that amount, Spencer is to surrender to the corporation the remaining shares; and it is expressly provided that, if Spencer is not fully paid by the disposition of the stock, he is to rely upon his deed of trust, "now being executed for his security," and further expressly provides that the agreement shall not in any way impair Spencer's security as represented by his deed of trust on the properties in question, but that the "deed of trust shall be and remain as paramount security for the said C. F. Spencer, which is being executed to him for said indebtedness." Until this instrument had been questioned or set aside upon some equitable ground by pleading and evidence, the appellant was not entitled to introduce any testimony which would, in effect, vary or contradict its terms.

[7] Appellant complains of the action of the court in excluding what purports to be an affidavit made by H. J. Hartwell, as treasurer of the corporation, on January 1, 1923, showing the assets and liabilities of the corporation at that time. The bill of exception upon which this contention is based shows that appellant's counsel asked Hartwell if he did not make an affidavit showing the condition of the company when he was applying for the right to sell stock in Florida. He answered: "I never applied for any right; it was already applied for when I got in." He

was then asked if he did not make an affidavit and send it down to enable him to sell stock. He answered: "No, sir; I never did."

Objection was then interposed by appellees' counsel, that such affidavit had nothing to do with this case, was immaterial; that it could not bind Wolfe nor anybody else in the case. Appellant's counsel then stated it was offered for the purpose of impeaching the witness. Appellees' counsel insisted that it was not admissible for that purpose, as it would be upon an immaterial matter. The affidavit was then offered without any proof whatever tending to show that the witness, Hartwell, had, in fact, made it. In the face of the witness' denial, the affidavit was clearly not admissible for the purpose of impeachment, even if the matter inquired about could be held material and binding upon appellees. The affidavit attached to the bill of exceptions fails to show that the corporation was indebted to Spencer in the sum of $42,000. It shows notes payable, not due, $31,085, authorized stock $2,000,000, and unissued stock $1,-674,605. If it had been shown that Hartwell made the statement and verified it, it was res inter alios acta, and not binding upon either Wolfe or Spencer, whether the statement was true or false. It was not shown that either Spencer or Wolfe knew anything about the transaction, and, being an ex parte affidavit by a third party, under such circumstances, could not affect their rights.

[8, 9] A great deal has been said in the briefs in regard to Spencer's implied vendor's lien and his right as the holder of the superior title to repossess the land when the corporation failed to pay the purchase money. Under the view we take of the case, we do not think it necessary for us to discuss that contention. We strongly incline to the opinion that when the field notes are applied to the subject-matter conveyed, under all the circumstances a question of latent ambiguity was presented. Be this as it may, we are of the opinion that it is not necessary for us to definitely declare our position upon that question. In the conveyance from Spencer to the corporation there are practically the same defects as we find exists in the notice and trustee's deed. If the description was so defective in the instrument in virtue of which Spencer conveyed the leasehold to the corporation as to render the conveyance void, then, the corporation acquired no property right under it. This being true, Battle's attempt to fix a judgment lien upon the property is a nullity, and he acquired no title in virtue of his sale and purchase under execution. He could acquire by such proceeding no greater right than the corporation had. The record shows that in his attempt to fix his judgment lien, no credits have been entered upon the judgment, and the requirement of the statute that the judgment lien must show all credits and payments which have been made upon the

judgment since it was obtained is mandatory. It is fundamental that Battle must recover as plaintiff in trespass to try title upon the strength of his own title. He cannot insist that the assignment to his debtor, the corporation, is void, and at the same time assume the inconsistent position that he acquired a valid title by sale and purchase under execution from the defendant in execution who had no title. As heretofore stated, however, we think extrinsic evidence was admissible to identify the subject-matter of the several instruments pointed out.

[10, 11] In our opinion, the fatal weakness in plaintiff's title lies in the fact that he made no effort to fix his judgment lien and did not purchase the land under execution until after Spencer had foreclosed· his deed of trust and acquired the title and possession under the trustee's sale. The unintentional misdescription of the property, which is the result of the mutual mistake, does not invalidate the instrument as between the parties or as to a subsequent incumbrancer or purchaser with notice of the mistaken description. Mervin v. Murphy, 35 Tex. 787; Berry v. Wright, 14 Tex. 270; Rushing v. Citizens' National Bank (Tex. Civ. App.) 162 S. W. 460; Walker v. Gore, 257 S. W. 322; 12 L. R. A. 177, note.

[12] Appellant does not, and cannot, under the record, claim as a bona fide purchaser. He took whatever title the corporation had when his execution was levied and the property sold, and nothing more. Under the record, the corporation had been divested of all title by the trustee's sale, and Spencer was then in possession of the property, and Battle had notice of all the facts upon which Spencer's possession was based. As between Spencer and the corporation, the defective description of the property could not be taken advantage of by the corporation.

"When the objection is merely to the indefiniteness of the description, it does not lie with the mortgagor to say that he conveyed the property by a description so loose or indefinite that no title could pass upon a foreclosure sale of the property. If nothing passes, it is the misfortune of the mortgagee, but the mortgagor is not hurt; if anything does pass, the mortgagee is entitled to the benefit of the mortgage as it stands." 1 Jones on Mortgages, § 65; 19 R. C. L. 287, § 61.

[13] The appellant contends that, since the jury answered special issue No. 1, the finding being, in effect, that a competent surveyor could not locate the land in question on the ground from the description contained in the deed of trust, or referred to therein, such finding is binding upon the trial court, and judgment could not be entered contrary thereto.

The jury· asked the following further instruction:

"Does the word 'underscore,' referred to in special issue No. 1, permit a surveyor to go back of this deed of trust to get additional data?"

And the court gave the following instruction:

"The surveyor would be authorized to use the field notes of any tract or survey which is mentioned in the description in the deed of trust."

The effect of the issue and of the additional instruction was to limit the.surveyor. to the description contained in the deed of trust or referred to therein. If the appellees were en- titled to introduce further evidence to identi- ty the subject-matter, and if the surveyor would have been authorized to go to the field notes of surrounding surveys and take into consideration the fact that the land in question was occupied within well-defined boundaries, and was being operated as an oil lease, the issue is manifestly too narrow, and the finding becomes immaterial. Limiting the inquiry to the data referred to in the instrument reduced the issue to a question of law, and it should not have been submitted to a jury or a surveyor to pass upon its sufficiency. Under such circumstances, it became purely a question of law for the court. Fant v. Sullivan (Tex. Civ. App.) 152 S. W. 515; Charbonnett v. Arbetter et al. (Tex. Civ. App.) 189 S. W. 1037; D. C. Giddings et al. v. Mabel Day et al., 84 Tex. 605, 19 S. W. 682. The issue being immaterial in the light of the pleadings and evidence, the court properly disregarded it in rendering judgment under R. S. 1925, arts. 2202, 2209.

We think the proper judgment has been entered, and it is therefore affirmed.